IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CERTA PROPAINTERS, LTD.**<br>150 Green Tree Road, Suite 1003<br>Oaks, PA  19456 | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| **GORDON KOHL**, individually, | : | Case No. |
| 507 Rudder Avenue | : | |
| Carlsbad, CA 92011 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

### PARTIES

1.      Plaintiff, Certa ProPainters, Ltd. ("Plaintiff" or "CertaPro") is a Massachusetts corporation with its principal place of business located at 150 Green Tree Road, Suite 1003, Montgomery County, Oaks, Pennsylvania 19456.

2.      At all times referred to herein, CertaPro has engaged in business as the national franchisor of Certa ProPainters franchises, which offer painting, decorating and related services to customers.  As of December 31, 2007, there were 298 CertaPro franchisees operating in 43 states.

3.      Defendant, Gordon Kohl ("Kohl") is an individual, resident and citizen of California with an address of 507 Rudder Avenue, Carlsbad, California 92011.

1

JURISDICTION AND VENUE

4.      This Court has jurisdiction over the parties and subject matter in this civil action pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      Venue for this action is predicated upon 28 U.S.C. §1391(b) as the parties contracted that disputes be litigated to conclusion in this judicial district and it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

BACKGROUND

The Franchise Agreement

6.      CertaPro franchisees are licensed to use CertaPro's proprietary marks to operate under CertaPro's business system pursuant to the terms and conditions of the CertaPro franchise agreement entered into between CertaPro and each franchisee (the "CertaPro System").

7.      CertaPro's franchisees are also licensed to use CertaPro's proprietary business policies, procedures, standards, ad specifications for operations, all of which are disclosed to CertaPro franchisees in confidence.

8.      Under each franchise agreement, CertaPro franchisees are required to pay CertaPro ongoing royalty fees, including minimum royalty fees, and to use their best efforts in operating the franchise.

9.      On or about December 29, 2004, CertaPro and Chris Mura-Smith ("Mura-Smith") entered into a franchise agreement, pursuant to which Mura-Smith obtained the right to and undertook the obligation to operate a CertaPro franchise for a term of ten (10)

years (the "Franchise Agreement") in a designated territory of Laguna, California (the "Franchised Business"). A true and correct copy of the Franchise Agreement is attached as Exhibit "A."

10. Pursuant to Article 2.1 of the Franchise Agreement, the franchisee is required to pay CertaPro a monthly royalty of 5% of Sales for the first $500,000 of gross sales in a year and thereafter a declining percentage for gross sales thresholds.

11. Further, notwithstanding the monthly royalty payment on gross sales, pursuant to Article 2.2 of the Franchise Agreement, the franchisee is required to pay CertaPro a minimum annual royalty fee of $20,000.

12. Pursuant to Article 6.2 of the Franchise Agreement, the franchisee is required to operate the franchised business with due diligence.

13. In addition, pursuant to Article 6.2 of the Franchise Agreement, the franchisee is required to ensure that prompt, courteous and efficient service is accorded to his customers at all times and to comply with CertaPro's quality and performance standards.

Transfer of the Franchise Agreement

14. In 2006, Kohl expressed interest in purchasing a CertaPro franchise.

15. CertaPro provided Kohl with a pre-sale disclosure document known as a Uniform Franchise Offering Circular ("UFOC") which describes the CertaPro System and provides certain other items of information.

16. Kohl had ample opportunity to investigate the CertaPro franchise system and perform any due diligence that he thought necessary prior to purchasing a CertaPro franchise.

3

17.     Ultimately, in 2007, rather than purchase the rights to operate a CertaPro franchise in a new undeveloped territory, Kohl decided to purchase the existing Franchised Business from Mura-Smith.

18.     Thereafter, CertaPro provided Kohl with an intensive two week training program in which he was trained in the CertaPro System, including but not limited to marketing, estimating, production management, painting and job site management and sales.

19.     Pursuant to an asset purchase agreement dated April 10, 2007, Kohl purchased the Franchised Business from Mura-Smith.

20.     Thereafter, on or about April 16, 2007, Kohl, Mura-Smith and CertaPro executed a Consent of Assignment Agreement, pursuant to which Kohl ratified and agreed to be bound by all the terms of the Franchise Agreement.  A true and correct copy of the Consent of Assignment Agreement is attached hereto as Exhibit "B".

21.     Section 16 of the Consent of Assignment Agreement provides in pertinent part that "any action by or against CertaPro arising out of or relating to this Agreement shall be commenced and concluded in the Commonwealth of Pennsylvania before the Court of Common Pleas of Montgomery County or the United States District Court for the Eastern District of Pennsylvania."

Breach of the Franchise Agreement

22.     Upon information and belief, Kohl is no longer devoting his best efforts to the operation of the Franchised Business or operating it with due diligence.

23.     Upon information and belief, Kohl has sought to sell some of the assets used in connection with the Franchised Business.

24.     Upon information and belief, Kohl is not diligently marketing the Franchised Business, for example, sending only 55% of the direct mail pieces he had committed to send pursuant to his 2008 annual plan submitted to CertaPro, which was one-third less than he sent in his first partial year of operation in which he operated the Franchised Business in 2007.

25.     Kohl has refused to participate in CertaPro's efforts to assist him in marketing and generating leads, failing to attend a CertaPro organized a "Peer to Peer" cold call event in his territory, causing CertaPro personnel to conduct such cold calling without Kohl during which they generated two painting leads in an hour.

26.     As a result, Kohl's 2008 leads for 11 ½ months are only 42% of his budgeted leads, which figure is only 13 leads more than he had in the 8 ½ months he operated the Franchised Business in 2007.

27.     Further, Kohl's slippage rate, the difference between leads generated and leads that turn into estimates, is at 25% in 2008 vs. the 13% budgeted and achieved in 2007.

28.     Upon information and belief, Kohl is merely servicing the leads that come in, is making little or no effort to generate leads himself which is a vital and integral part of the CertaPro System designed to develop the designated territory, and failing to diligently pursue those leads that do exist.

29.     To date, Kohl has failed to generate sufficient gross sales to meet his contractual minimum royalty requirement through his monthly royalties and will owe CertaPro approximately $11,000 in minimum royalties for 2008.

30.     Further, Kohl is failing to timely provide prompt, courteous and efficient service to his customers thereby failing to maintain CertaPro's performance and quality standards, all contrary to the CertaPro System.

31.     For example, Kohl has had a painting job open for over 236 days, has failed to satisfactorily complete the job, and is now attempting to push the customer off to another CertaPro franchisee for completion.

32.     Upon information and belief, Kohl is no longer verbally communicating with this customer and will communicate only by email.

33.     Similarly, Kohl stopped verbally communicating with the CertaPro general manager assigned to assist him and is only responsive to emails.

Kohl's Reaction to CertaPro's Efforts

34.     CertaPro has attempted on numerous occasions to work with Kohl on growing the Franchised Business and to ensure that he is operating pursuant to CertaPro's standards.

35.     Kohl has rebuffed CertaPro's efforts and instead, pursuant to a letter from his attorney dated December 3, 2008, asserted that CertaPro made misleading claims in inducing him to execute the Consent to Assignment Agreement and demanded that CertaPro agree to rescind the Franchise Agreement and pay damages that exceed the amount in controversy requirement of 28 U.S.C. §1332(a).

36.     In addition, despite the parties' agreement to litigate to conclusion all disputes in Pennsylvania, Kohl's attorney stated that, if CertaPro refused his demands, Kohl would institute an arbitration proceeding in Orange County, California.

## COUNT I – BREACH OF CONTRACT

37.     Paragraphs 1 through 36 above are hereby incorporated by reference as if set forth at length herein.

38.     CertaPro has fulfilled all of its obligations under the Franchise Agreement.

39.     Kohl has failed to operate the Franchised Business with due diligence and has failed to provide prompt and courteous service to his customers, contrary to the requirements of the CertaPro System.

40.     Kohl's conduct in the operation of the Franchised Business constitutes a breach of Franchise Agreement.

41.     As a direct and proximate cause of Kohl's breach of the Franchise Agreement, CertaPro has suffered damages.

WHEREFORE, plaintiff, Certa ProPainters, Ltd., demands judgment against the defendant plus interest, costs, attorneys' fees and such other relief which this Court deems just.

## COUNT II – DECLARATORY JUDGMENT

42.     Paragraphs 1 through 41 above are hereby incorporated by reference as if set forth at length herein.

43.     CertaPro provided Kohl with a UFOC that was true, complete and accurate at the time it was issued.

44.     Kohl had ample opportunity to investigate the CertaPro franchise system and perform any due diligence that he thought necessary prior to purchasing an existing CertaPro franchised business from a third-party.

45.     CertaPro did not make any false or misleading statements to Kohl in the UFOC or otherwise.

46.     CertaPro at all times has acted lawfully and has fulfilled all of its obligations under the Franchise Agreement.

WHEREFORE, plaintiff, Certa ProPainters, Ltd., demands a declaration that:

(1) CertaPro did not make any false or misleading statements to Kohl which induced him to purchase the Franchised Business and enter into the Consent to Assignment Agreement;

(2) CertaPro acted lawfully during the sales process; and

(3) Kohl has not been damaged by any act or omission of CertaPro and that he is not entitled to rescind the Franchise Agreement.

## COUNT III – DECLARATORY JUDGMENT

47.     Paragraphs 1 through 46 above are hereby incorporated by reference as if set forth at length herein.

48.     The Consent to Assignment Agreement is a valid and enforceable agreement that compels any dispute between the parties to be brought and litigated to conclusion only in the Pennsylvania Court of Common Pleas for Montgomery County or the United States District Court for the Eastern District of Pennsylvania.

49.     Any agreement to arbitrate disputes under the Franchise Agreement between Mura-Smith and CertaPro does not constitute a valid arbitration agreement between Kohl and CertaPro.

WHEREFORE, plaintiff, Certa ProPainters, Ltd., demands a declaration that:

(1) disputes between Kohl and CertaPro must be brought and litigated to conclusion only the Pennsylvania Court of Common Pleas for Montgomery County or the United States District Court for the Eastern District of Pennsylvania; and

(2) there is no agreement between CertaPro and Kohl to arbitrate disputes between them.

**FISHERZUCKER, LLC**

By: ⟋⟍

Lane Fisher, Esquire
F. Joseph Dunn, Esquire
PA Attorney ID Nos. 57199/76175
21 S. 21st Street
Philadelphia, PA 19103
215-825-3100
Attorneys for Plaintiff
Certa ProPainters, Ltd.

Date:   December 19, 2008

**EXHIBIT "A"**

*assigned to*
*Gordon*
*Kohl*

# Certa ProPainters™

★ ★ ★ ★ ★

**-and-**

## CHRIS MURA - SMITH

# CERTA PROPAINTERS LTD.

# FRANCHISE AGREEMENT

# TABLE OF CONTENTS

ARTICLE 1 - GRANT OF FRANCHISE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.1    Grant of Franchise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.2    Exclusivity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.3    Reservation of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.4    Authorized Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE 2 - INITIAL FEE & ROYALTY FEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    2.1    Initial Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    2.2    Royalty Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    2.3    Reporting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    2.4    Due Date of Royalty and Other Monthly Fees . . . . . . . . . . . . . . . . . . . . . . . 6
    2.5    Late Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    2.6    Additional Penalty for Failure to Timely Pay Fees . . . . . . . . . . . . . . . . . . . 7
    2.7    Software Upgrade Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    2.8    Software Support Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    2.9    Answering Service and Voice Mail Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARTICLE 3 - TERM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    3.1    Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    3.2    Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARTICLE 4 - TRAINING AND OPERATIONS ASSISTANCE . . . . . . . . . . . . . . . . . . . . . . . 9
    4.1    Initial Franchisee Training . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    4.2    Additional Franchisee Representative - Initial Training . . . . . . . . . . . . . . . . . 9
    4.3    Mandatory In-Term Training . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    4.4    Advertising and Business Promotion Support . . . . . . . . . . . . . . . . . . . . . . . 9
    4.5    Operating Assistance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARTICLE 5 - TRUCKS, MACHINERY, EQUIPMENT AND  SIGNS . . . . . . . . . . . . . . . . . . . 9
    5.1    Use of Trucks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    5.2    Machinery, Equipment and Signs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    5.3    Maintenance and Replacement of Machinery, Equipment and Truck . . . . . . . 10

ARTICLE 6 - OPERATION OF THE FRANCHISE BUSINESS . . . . . . . . . . . . . . . . . . . . . . 10
    6.1    Performance Criteria . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    6.2    Duties and Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    6.3    Purchase and Sale of Products and Supplies . . . . . . . . . . . . . . . . . . . . . . . 11
    6.4    System Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    6.5    Phone Number, Power of Attorney - Telephone . . . . . . . . . . . . . . . . . . . . . 11
    6.6    Identification of the Certa Pro Business . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    6.7    Warranty Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    6.8    Maintenance of Bank Accounts/Transfer of Funds . . . . . . . . . . . . . . . . . . . 12
    6.9    Right to Inspect the Certa Pro Business . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE 7 - OPERATIONS MANUAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE 8 - CONFIDENTIAL INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    8.1    Trade Secrets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8.2    Non-Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE 9 - CERTA PRO PROPRIETARY MARKS . . . . . . . . . . . . . . . . . . . . . 13
9.1    Trademark Ownership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
9.2    Use of the Certa Pro Proprietary Marks . . . . . . . . . . . . . . . . . . . . . . 14
9.3    Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
9.4    Substitutions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
9.5    Revisions to the Proprietary Marks . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARTICLE 10 - RESTRICTIVE COVENANTS AND TRADE SECRETS . . . . . . . . . 15
10.1   During the Term of this Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . 15
10.2   After the Term of this Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
10.3   Intent and Enforcement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
10.4   Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
10.5   Publicly-Owned Entity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARTICLE 11 - ADVERTISING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
11.1   General Advertising Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
11.2   Local Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
11.3   Approval of Marketing, Advertising and Promotional Materials . . . . . . . . . . . 19
11.4   Ownership of Advertising Materials . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARTICLE 12 - ACCOUNTING, RECORDS, REPORTS, AUDITS AND INSPECTIONS . . . . 19
12.1   Bookkeeping and Accounting Records . . . . . . . . . . . . . . . . . . . . . . . 19
12.2   Business Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
12.3   Financial Reports and Inspections . . . . . . . . . . . . . . . . . . . . . . . . . . 20
12.4   Inspection and Audit of Books and Payroll Records . . . . . . . . . . . . . . . . . . 20
12.5   Fee Adjustments for Underpayment . . . . . . . . . . . . . . . . . . . . . . . . . 20
12.6   Credit and Trade References . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ARTICLE 13 - INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
13.1   Types of Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
13.2   Placement of Insurance by Certa Pro . . . . . . . . . . . . . . . . . . . . . . . . 22
13.3   Third Party Sub-Contractors - Insurance . . . . . . . . . . . . . . . . . . . . . . 22

ARTICLE 14 - SALE, ASSIGNMENT, TRANSFER AND ENCUMBRANCES . . . . . . . . . . 22
14.1   Assignment by Franchisee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
14.2   Right of First Refusal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
14.3   Sale of Shares or Other Interest in Franchisee . . . . . . . . . . . . . . . . . . 24
14.4   Assignment to Controlled Corporation . . . . . . . . . . . . . . . . . . . . . . . 24
14.5   Transfer of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
14.6   Assignment By Certa Pro . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ARTICLE 15 - DEATH OR PERMANENT DISABILITY . . . . . . . . . . . . . . . . . . . . 25

ARTICLE 16 - TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
16.1   Termination of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
16.2   Certa Pro's Options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
16.3   Termination By Certa Pro With Opportunity to Cure . . . . . . . . . . . . . . 26
16.4   Termination By Certa Pro Without Opportunity to Cure . . . . . . . . . . . . 28
16.5   Effect of Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
16.6   Additional Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

16.7   Survival of Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
16.8   Failure to Act Not to Affect Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ARTICLE 17 - SECURITY TO FRANCHISOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
17.1   Security Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
17.2   Other Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ARTICLE 18 - DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
18.1   Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
18.2   Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
18.3   Third Party Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
18.4   Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
18.5   Jurisdiction and Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
18.6   Jury Trial Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
18.7   Waiver of Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
18.8   Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ARTICLE 19 - GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
19.1   Gender, Number and Person . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
19.2   Overdue Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
19.3   Indemnification of Certa Pro . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
19.4   No Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
19.5   Joint and Several . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
19.6   Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
19.7   Franchisee May Not Withhold Payments Due Certa Pro . . . . . . . . . . . . . . . . 33
19.8   Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
19.9   Headings, Article Numbers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
19.10  Governing Law; Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
19.11  Time of the Essence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
19.12  Waiver of Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
19.13  Default Cumulative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
19.14  Set-Off by Certa Pro . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
19.15  Further Assurances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
19.16  Binding Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
19.17  When Agreement Binding on Certa Pro . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
19.18  Rights of Certa Pro are Cumulative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
19.19  Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
19.20  Entire Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

ARTICLE 20 - ACKNOWLEDGMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
20.1   Independent Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
20.2   Independent Contractor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

ADDENDUMS
    Schedule A    Territory Addendum and Authorized Telephone Numbers
    Schedule B    Conditional Assignment of Telephone Numbers
    Schedule C    Secrecy and Confidentiality Agreement
    Schedule D    Employee Confidentiality Agreement
    Schedule E    Assignment and Assumption Agreement
    Schedule F    Security Agreement
    Schedule G    Personal Guaranty
    Schedule H    State Addendums

# FRANCHISE AGREEMENT

**THIS FRANCHISE AGREEMENT** (this "Agreement") is made effective as of the date set forth on the signature page at the end of this Agreement (the "Effective Date") by and

**BETWEEN:**

Certa ProPainters, Ltd.
a Massachusetts corporation
(hereinafter referred to as the
"Franchisor" or "Certa Pro")

- and -

Chris Aura - Smith

26741 Portola Pkwy, Ste. 1E # 488

Foothill Ranch, CA 92610

(hereinafter referred to as the "Franchisee").

## WITNESSETH

**WHEREAS**, Certa Pro has developed a system for the opening, operation and promotion of businesses that provide painting and decorating services (the "Certa Pro System") as the same is described in the Certa Pro Methods of Operation Manual as amended from time to time (the "Operations Manual");

**WHEREAS**, The Certa Pro System is identified by certain trade names, trademarks, service marks, logos, copyrights, emblems and other indicia of origin including the service mark "Certa ProPainters" and the Certa Pro logo and design as Certa Pro now designates and may hereinafter designate in connection with the Certa Pro System (the "Proprietary Marks").

**WHEREAS**, Franchisee desires to own and operate a Certa Pro franchise in a manner which is consistent with, and which will promote, Certa Pro's reputation, standards of quality and goodwill and Certa Pro, in reliance on the representations made by Franchisee, is willing to provide certain training, materials, equipment and supplies and ongoing assistance relating to the Certa Pro System and to grant a franchise to Franchisee under the terms and conditions of this Agreement, which terms are acceptable to Franchisee and are acknowledged by the parties to be material and reasonable (the "Certa Pro Business").

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in further consideration of the mutual covenants, promises, and conditions contained herein, the parties agree as follows:

## ARTICLE 1 - GRANT OF FRANCHISE

1.1     Grant of Franchise.    Subject to the terms and conditions set forth in this Agreement, Certa Pro hereby grants to Franchisee, and Franchisee hereby accepts, a non-exclusive license to operate a Certa Pro Business utilizing the Certa Pro System and the Certa Pro Proprietary Marks in the territory described in Schedule "A" attached hereto (the "Territory").

1.2     Exclusivity.    Except as provided for in this Agreement and so long as Franchisee is in substantial compliance with the terms and conditions of this Agreement, Certa Pro agrees not to locate another Certa Pro franchise within Franchisee's Territory for the duration of this Agreement and any renewals thereof. Certa Pro retains the right among others, to establish and grant others the right to establish Certa franchises outside the Territory. Further, Franchisee acknowledges that other franchisees may perform perform, accept and undertake projects within the Territory as set forth in this Agreement.

1.3     Reservation of Rights. Certa Pro retains the right to use the Proprietary Marks in alternative forms of distribution, including but not limited to the sale of goods or materials, including but not limited paint and painting supplies such as brushes to or through manufacturers, wholesale outlets, malls, retail stores and individuals, or by mail order, electronic commerce or any other direct sales method, anywhere in the world including sales from and to locations in your Territory.

1.4     Authorized Services. Subject to the limitations described herein, Franchisee is hereby authorized to offer, sell and perform the following:

1.4.1.   Residential Services: Franchisee may offer, sell and perform the following services (the "Residential Services") only in the Territory:

1.4.1.1     painting and decorating of the interior or exterior of any one, two, three or four unit residential dwellings including any accessory buildings, garages, sheds, barns and fences which are a part of such buildings;

1.4.1.2     painting and decorating of the interior of individual residential apartments, condominiums or townhouses, but specifically excluding the exterior of any such structures and any interior or exterior common areas such as hallways, vestibules, or storage areas; and

1.4.1.3     painting and decorating of the interior or exterior of individual business offices, not subject to the National Account Program provided the total aggregate contract amount of the services the Franchisee wishes to perform does not exceed $15,000 for any one particular job.

Franchisee is expressly prohibited from offering, selling or performing any of the Residential Services in any area outside the Territory.

1.4.2. <u>Commercial Services:</u>

    1.4.2.1    Franchisee, upon payment to Certa Pro of the then current one time nonrefundable Commercial Services Licensing Fee, execution of Certa Pro's Commercial Services Addendum and completion of Certa Pro's Commercial Training Program and such other requirements as Certa Pro from time to time may require, will be authorized to offer, sell and perform any painting and decorating of the interior or exterior of any building ("Commercial Services Qualified") not specifically identified as a Residential Service ("Commercial Services").

    1.4.2.2    Franchisee acknowledges and expressly understands and agrees that until such time as Franchisee becomes Commercial Services Qualified, Franchisee shall have no right to Commercial Services contracts within the Territory and Certa Pro or Certa Pro Commercial Services Qualified franchisees may perform Commercial Services contracts within the Territory using Certa Pro's Proprietary Marks. Franchisee disclaims any compensation or consideration for work performed by others in the Territory pursuant to this section.

1.4.3. <u>Program Services:</u> From time to time, Certa Pro may establish certain programs for the benefit of its franchisees and the Certa Pro System whereby Certa Pro Franchisees will be permitted to offer, sell and perform certain painting and/or decorating services (the "Program Services") in accordance with the specifications described in any particular program established by Certa Pro from time to time.

    1.4.3.1    <u>National Accounts.</u>

        1.4.3.1.1    The term National Account means any customer which on its own behalf or through agents, franchisees or other third parties owns, manages, controls or otherwise has responsibility for buildings or common-services in more than one (1) location whose presence is not confined within any one particular franchisee's territory regardless of the aggregate contract amount of the services the Franchisee wishes to perform. Any dispute as to whether a particular customer is a National Account shall be determined by Certa Pro in its sole discretion and Certa Pro's determination shall be final and binding.

        1.4.3.1.2    Certa Pro shall have the exclusive right, unless otherwise specifically delegated in writing, on behalf of itself, Franchisee, and/or other franchisees utilizing the Proprietary Marks, to negotiate and enter into agreements or approve forms of agreement to provide services to National Account customers, including any affiliate, company owned or franchised locations within the Territory.

1.4.3.1.3   Following the execution of a contract with or the acceptance of a bid by a National Account customer which contemplates the provision of services to one or more National Account customer location within the Territory, Certa Pro will, if Franchisee is Commercial Services Qualified and conditioned upon Franchisee's substantial compliance with the terms of this Agreement and any addendum, provide Franchisee the option to perform such services pursuant to the terms and conditions of the National Account contract or on such terms and conditions as Certa Pro in its discretion determines.

1.4.3.1.4   If Franchisee elects not to provide services to a National Account customer in conformity with the terms and conditions of the National Account bid or contract, or fails to make an election within the time specified by Certa Pro, of being offered the opportunity by Certa Pro, Franchisor shall have the right, exercisable in its sole discretion, to:

1.4.3.1.4.1   provide, directly or through any other licensee or franchisee utilizing the Certa Pro proprietary marks, services to the National Account customer location(s) within the Territory on the terms and conditions contained in the National Account bid or contract; and/or

1.4.3.1.4.2   contract with another party to provide such services to the National Account customer location(s) within the Territory on the terms and conditions contained in the National Account bid or contract between Certa Pro and the National Account customer, utilizing the Certa Pro proprietary marks or any other trademarks, service marks or trade names.

1.4.3.1.5   Neither the direct provision by Certa Pro (or a franchisee, licensee, or agent of Certa Pro) of services to National Account customers as authorized in (i) above, nor Certa Pro's contracting with another party to provide such services as authorized in (ii) above, shall constitute a violation of Article 1, Section 1.2 of the Franchise Agreement relating to the exclusivity of the Territory, even if such services are delivered from a location within the Territory. Franchisee disclaims any compensation or consideration for work performed by others in the Territory pursuant to this section.

1.4.4.   Program Participation.   Franchisee's participation in any particular program, including but not limited to the National Account Program, will be subject to the terms and

conditions of such program. Such terms and conditions may include, but shall not be limited to, the following:

1.4.4.1   prior to offering, selling or performing any Program Services, Franchisee shall execute such agreements, undertakings or other instruments as Certa Pro may require as a condition to participation in any particular program which Certa Pro may then be offering to its franchisees. Franchisee agrees to abide by the terms and conditions of such agreements;

1.4.4.2   Program Services, including National Account work, is subject to Certa Pro's strict quality control standards, enhanced inspections and testing and shall be completed according to Certa Pro's scheduling requirements. Certa Pro may also centralize all accounts, invoicing and payments for Program Services or designate a third party to perform such functions.

1.4.4.3   Franchisee may be required to pay certain fees including participation or administration fees, additional royalties on work performed pursuant to any particular program, or other fees related to the Program Services described in any particular program. These fees may be in addition to the Royalties provided for in Section 2.2 of this Agreement;

1.4.4.4   prior to performing any Program Services, Franchisee must be certified by Certa Pro to perform the specific type of work specified in the particular program. Certification may require, among other things, that Franchisee be trained by Certa Pro or other qualified third parties and demonstrate, to Certa Pro satisfaction, a minimum level of competency in the performance of the intended service; and

1.4.4.5   Franchisee must be in substantial compliance with the terms of this Agreement and any addendum.

## ARTICLE 2 - INITIAL FEE & ROYALTY FEE

2.1   <u>Initial Fee</u>.  Franchisee agrees to pay to Certa Pro, a non-refundable initial franchise fee in the amount of $40,000 (the "Initial Franchise Fee").  This Initial Franchise Fee shall be deemed to be fully earned by Certa Pro upon the execution of this Agreement and Franchisee shall not be entitled to a refund of any part thereof, regardless of the date of termination of this Agreement, except as provided in Sections 16.2 and 16.3.1 of this Agreement.

2.2   <u>Royalty Fee</u>.  Subject to the provisions of Section 2.2.1, during the Term of this Agreement, Franchisee shall pay to Certa Pro a monthly Royalty Fee ("Royalty Fee") in an amount equal to a percentage of Gross Sales as follows: (i) 5% on the first $500,000 of Gross Sales in a calender year; (ii) 4% of the next $500,000 of Gross Sales in a calender year; and (iii) 2% on all Gross Sales over $1,000,000 in a calender year.

| AMOUNT OF GROSS SALES | ROYALTY FEE |
|---|---|
| $0.00 - $500,000 | 5.0% |
| $500,001 - $1,000,000 | 4.0% |
| $1,000,001 and over | 2.0% |

Gross Sales shall include the total amount of all sales for labor, material and/or services performed or rendered by: (i) Franchisee; or (b) any third party subcontractors of Franchisee who perform services for Franchisee's clients as part of Franchisee's services and pay Franchisee compensation of any kind. Gross Sales shall also include all commissions, finders fees, referral fees, construction management fees or other compensation received by Franchisee on the gross value of the work performed.

    2.2.1  <u>Minimum Royalty Fee</u>. Notwithstanding the foregoing, commencing on the 1st day of January of the year immediately following the second anniversary date of the date of this Agreement, Franchisee shall be required to pay to Certa Pro a minimum annual royalty in the amount of $20,000, as such amount shall be calculated in accordance with this section and adjusted annually (the "Minimum Royalty Fee").

        2.2.1.1    if, by January 1 of each year, the sum of all Royalty Fees due by Franchisee during the preceding calendar year is less than the amount of the Minimum Royalty Fee, then Franchisee shall pay the difference between the Royalty Fees actually due and the Minimum Royalty Fee.

        2.2.1.2    commencing on the first anniversary of this Agreement and on each succeeding anniversary date thereafter, the Minimum Royalty Fee (as the same may have been previously adjusted) shall be increased by an amount equal to the increase, if any, in the Cost of Living Index - All Urban Consumers (as reported each year by the United States Department of Labor or such other successor or renamed index or agency thereto) in effect on the anniversary date over the Cost of Living Index in effect on the immediately preceding anniversary date.

  2.3  <u>Reporting</u>.    Sales and service contracts are deemed to be closed upon the contracted work being substantially completed. Franchisee shall report Gross Sales using such forms or in such format as Certa Pro may specify from time to time. Certa Pro may, at any time and from time to time, modify the required format and content of the sales report. Franchisee agrees to report the amount of all Gross Sales and to pay the Royalty Fee as provided herein. All Royalty Fees are non-refundable.

  2.4  <u>Due Date of Royalty and Other Monthly Fees</u>.  Franchisee agrees to pay the Royalty Fees and all other monthly fees payable to Certa Pro by the tenth (10th) day of each month for the prior month's Gross Sales. Calculation of the amount of the Royalty Fees payable by the Franchisee shall be based on sales reports prepared by the Franchisee (which reports shall be prepared in a form approved by Certa Pro) and shall be submitted to Certa Pro at the same time as the Royalty Fees are paid. In the event that Franchisee fails to submit the required reports,

the Royalty Fees due shall be calculated as the Franchisee's monthly average for the preceding 12 months or such data as may be available.

2.5     Late Payment.   Franchisee agrees that any amounts due to Certa Pro and not received by Certa Pro on or before their due date shall immediately begin to accrue interest as of the due date at the maximum rate allowed by law or one and one-half percent (1½%) monthly, whichever is less, without waiver of any other rights of Certa Pro.

2.6     Additional Penalty for Failure to Timely Pay Fees.   Franchisee understands and agrees that should the Franchisee fail to pay the Royalty Fee, Minimum Royalty Fee or any other fees due to Certa Pro when such fees are due, or should the Franchisee permit any of Franchisee's accounts with Certa Pro to become delinquent, Certa Pro may withhold any services it may then be providing to Franchisee until such time as Franchisee pays all outstanding fees due to Certa Pro.  In addition, Certa Pro reserves the right to withhold from Franchisee any products, services, information, advice, consultation, training and leads, and to deny Franchisee access to Certa Pro's proprietary software systems if Franchisee is not in compliance with the terms of this Agreement, any addendum or the Operations Manual.

Nothing contained in this section shall prevent Certa Pro from exercising, in its sole judgment, any other rights or remedies available to it elsewhere in this Agreement, including, should Certa Pro so chose, the right to terminate this Agreement for Franchisee's failure to make all payments when due.

2.7     Software Upgrade Fee.   Franchisee shall pay to Certa Pro a periodic Software Upgrade Fee in such amount as Certa Pro may set from time to time for upgrading the software which Certa Pro requires the Franchisee to use in connection with the operation of the Certa Pro Business.  Certa Pro agrees that the Software Upgrade Fee shall not be assessed more than one time in any calendar year.

2.8     Software Support Fee.   Franchisee shall be entitled to receive routine telephone support for any computer program Certa Pro makes available to the Franchisee.  As of the date of this Agreement, Franchisee shall not be required to pay any additional fees for the software support, but Certa Pro reserves the right, upon the giving of 60 days advance notice to Franchisee, to institute a reasonable fee for such services and Franchisee agrees to pay such fees as Certa Pro may impose from time to time.

Franchisee understands that any software support provided by Certa Pro shall not include support for any hardware or software obtained by Franchisee from third party suppliers nor shall it include the replacing or upgrading Franchisee's computer hardware or any other software used by Franchisee in connection with the Certa Pro Business.

2.9     Answering Service and Voice Mail Fee.   Franchisee shall be required to subscribe to, and transact all business through, the telephone answering service and voice mail service as designated by Certa Pro and shall comply with the terms and conditions established by Certa Pro from time to time.  As of the date of this Agreement, Franchisee shall not be required to pay any additional fees for the answering service or the voice mail, but Certa Pro reserves the right, upon the giving of 60 days advance notice to Franchisee, to institute a reasonable fee for such services and Franchisee agrees to pay such fees as Certa Pro may impose from time to time.

## ARTICLE 3 - TERM

3.1    Term.   This Agreement, unless otherwise terminated pursuant to the terms and conditions hereof, shall commence on the Effective Date and shall continue in force for a period of ten (10) years (the "Term").

3.2    Renewal.   Franchisee shall have the right to renew the license granted to Franchisee pursuant to this Agreement upon such terms and conditions as Certa Pro may then be offering other Certa Pro franchisees, for an additional ten (10) year period provided that:

    3.2.1   Franchisee shall have given Certa Pro notice of its intention to renew this Agreement no less than ninety (90) days prior to the expiration of the Term;

    3.2.2   at the expiration of the Term, Franchisee shall not be in default of any provision of this Agreement, any amendment hereof or any other agreement in force between Franchisee and Certa Pro and shall have substantially complied with all of the terms and conditions of such agreements throughout the Term;

    3.2.3   Franchisee shall have paid all amounts due and payable under this Agreement, including, without limitation, all fees referred to in Article 2 and all advertising fees referred to in Article 11;

    3.2.4   Franchisee shall have executed, prior to the commencement of any renewal term, all documents and agreements then customarily used by Certa Pro in the granting of franchises, including Certa Pro's then current form of franchise agreement, the terms and conditions of which may differ materially from this Agreement, including, without limitation,  renewal terms and terms with respect to fees charged by Certa Pro which may have been increased, provided however, that notwithstanding the foregoing, Franchisee shall not be required to pay an initial franchise fee (other than the renewal fee stipulated in Section 3.2.5 hereof) and further provided that Franchisee shall have no further option to renew other than as provided in this Agreement;

    3.2.5   Franchisee shall pay to Certa Pro a renewal fee equal to ten percent (10%) of the then current franchise fee;

    3.2.6   Franchisee shall pay all costs and expenses (including legal fees) which Franchisee may incur in connection with its renewal of the license granted hereunder; and

    3.2.7   Franchisee shall have completed, not later than thirty (30) days prior to the expiration of each term and to Certa Pro's satisfaction, all maintenance, retrofitting and upgrading of the vehicles and equipment (including any computer equipment and software) used by Franchisee in connection with the Certa Pro Business as Certa Pro shall reasonably require so that the Certa Pro Business shall reflect the then current image of other Certa Pro franchised businesses.

## ARTICLE 4 - TRAINING AND OPERATIONS ASSISTANCE

4.1     Initial Franchisee Training.   Prior to commencing operation of the Certa Pro Business, Certa Pro agrees to train Franchisee, or Franchisee's principal in the event of a corporate franchisee, in the methods and operations of a Certa Pro Business at the next scheduled franchisee training session or at such other regularly scheduled session as is agreeable to both parties.  The location of the initial training will be at Certa Pro's headquarters in Pennsylvania or at such other location as Certa Pro may designate.  All travel, living, and related expenses incurred by Franchisee or Franchisee's representative during the initial training shall be at Franchisee's sole cost and expense.

4.2     Additional Franchisee Representative - Initial Training.   In addition to the foregoing, Franchisee may, at it's option, have one additional representative participate in Certa Pro's initial training program at no additional charge at the time of Franchisee's initial franchisee training. Franchisee may, upon payment of Certa Pro's then current initial training fee, have additional representatives attend Certa Pro's initial training program at any time.  The training shall take place at such regularly scheduled franchisee training session as is agreeable to both parties. The location of the initial training will be at Certa Pro's headquarters in Pennsylvania or at such other location as Certa Pro may designate.  All travel, living, and related expenses incurred by Franchisee's representative during the initial training shall be at Franchisee's sole cost and expense.

4.3     Mandatory In-Term Training.   From time to time, Certa Pro will provide additional training courses which Franchisee or Franchisee's designated representative will be required to attend and for which the Franchisee will be charged a reasonable fee.  In addition, Franchisee will be responsible for the cost of all travel and living expenses and all wages payable to any of the Franchisee's representatives participating in the training programs.

4.4     Advertising and Business Promotion Support.   Prior to opening the Certa Pro Business, Certa Pro will provide assistance to the Franchisee in developing and establishing an advertising program to help promote the Certa Pro Business in the Territory.  The costs of such advertising programs shall be paid entirely by the Franchisee.

4.5     Operating Assistance.   During the term of this Agreement, Certa Pro may, at Franchisee's reasonable request and subject to availability, provide Franchisee with continuing advice and guidance with respect to the operation of the Certa Pro Business.  Franchisee understands and agrees that Certa Pro shall provide only such advice and guidance which, in its sole discretion, Certa Pro deems reasonably required with respect to the operation of the Certa Pro Business.

## ARTICLE 5 - TRUCKS, MACHINERY, EQUIPMENT AND  SIGNS

5.1     Use of Trucks.   Franchisee shall only use vehicle(s) approved by Certa Pro in connection with the operation of the Certa Pro Business.  Franchisee acknowledges and agrees that such vehicle(s) shall be used for the Certa Pro Business only and not for any other business or purpose whatsoever.

5.2     Machinery, Equipment and Signs.   Franchisee agrees to use in the operation of the Certa Pro Business only those brands or types of machinery, equipment, and signs as are in compliance with Certa Pro's specifications and standards for design, appearance, function,

performance and serviceability and to purchase all such items only from suppliers which have been approved by Certa Pro. Franchisee further agrees to place or display in or on any vehicles, machinery, and equipment only such signs, logos and display materials that have been approved in writing by Certa Pro.

5.3   <u>Maintenance and Replacement of Machinery, Equipment and Truck</u>.   Franchisee agrees that as items of machinery, equipment or an.y trucks or other vehicles used in connection with the Certa Pro Business become obsolete or mechanically impaired to the extent that they require replacement, Franchisee will replace such machinery, equipment or truck with either the same or substantially the same types of machinery, equipment or truck as are being installed or used in other of Franchisor's franchised businesses at the time replacement becomes necessary. The cost of replacing such machinery, equipment or trucks shall be borne exclusively by Franchisee.

## ARTICLE 6 - OPERATION OF THE FRANCHISE BUSINESS

6.1   <u>Performance Criteria</u>. Franchisee must achieve minimum Gross Sales of $200,000 in the first full calendar year of operation.  Franchisee must achieve minimum Gross Sales of $400,000 in the third full calendar year of operation.

6.2   <u>Duties and Obligations</u>.   In recognition of Certa Pro's advertising and promotion of the Certa Pro System and franchises, and the goodwill associated with the Certa Pro Proprietary Marks which has resulted therefrom, Franchisee agrees to operate the Certa Pro Business strictly in accordance with the Certa Pro System as set forth in the Operations Manual, or otherwise, and further agrees to:

6.2.1   operate the Certa Pro Business with due diligence and efficiency in a quality and reputable manner;

6.2.2   ensure that at all times prompt, courteous and efficient service is accorded to its customers and, in so doing, to adhere to the highest standards of honesty, integrity, fair dealings and ethical conduct;

6.2.3   sell only those services and products which meet Certa Pro's uniform standards of quality and quantity, as have been expressly approved for sale in writing by Certa Pro and to discontinue the sale of any service or product which fails to comply herewith upon receiving notice of such failure in writing;

6.2.4   maintain the condition and appearance of the Certa Pro Business and the vehicles and equipment used therein consistent with the  image of other Certa Pro franchises and to take such steps as are reasonably required, such as conducting maintenance and repairs, on a regular and frequent basis so as to maintain such condition and appearance;

6.2.5   at the request of Certa Pro, make available for a reasonable period of time each of its staff and manager(s) for training or retraining by Certa Pro, at Certa Pro's head office or other locality designated by Certa Pro, and Franchisee shall be responsible for all costs associated with such training and/or retraining including Certa Pro's then current fee for such training and/or retraining, travel, food and lodging costs and wages due to Franchisee's staff for attending such training;

6.2.6   comply with all state, local and federal laws, regulations and ordinances applicable to the Certa Pro Business including, without limitation, all labor laws, worker health and safety laws; environmental laws; insurance laws; and building, permitting, and licensing laws necessary for the proper operation of the Certa Pro Business;

6.2.7   comply with the quality and performance standards established by Certa Pro from time to time. In establishing such standards, Certa Pro shall consult with any Certa Pro franchisee advisory council which may exist at any given time, but shall not be bound to adopt or implement all or any proposals from such council;

6.2.8   cause any third party sub-contractors engaged by Franchisee to perform work on behalf of the Franchisee in respect of the Certa Pro Business to comply with all applicable requirements of this Section 6.2, including but not limited to the quality and performance standards required of Franchisee;

6.2.9   cause the Certa Pro Business to be operated by at least one person who has successfully completed an approved Certa Pro training program as deemed required by Certa Pro.

6.3     Purchase and Sale of Products and Supplies.  Franchisee acknowledges that the reputation and goodwill of the Certa Pro System is based upon the offering of high quality services and products. Accordingly, Franchisee agrees to sell or otherwise use only those services and products as Certa Pro shall first approve of in writing, and which are not thereafter disapproved. Franchisee further agrees that Franchisee shall not sell any paints, decorating products or paint related products which are not designated and approved in writing by Certa Pro unless Franchisee first obtains Certa Pro's written permission.

Franchisee acknowledges and agrees that Certa Pro will not be liable for any losses (financial or otherwise) or damages including consequential or special damages, resulting from any delay in delivery or availability of any of the products or services designated by Certa Pro.

6.4     System Modification.  Franchisee agrees that Certa Pro may modify the Certa Pro System or Programs, and in doing so adopt new trademarks, tradenames, services or products and new techniques in connection therewith. Franchisee agrees to, at its own cost, promptly implement such changes and in the event it fails to do so, to permit Certa Pro to rectify such failure, at Franchisee's cost.

6.5     Phone Number, Power of Attorney - Telephone.  Franchisee agrees not to publish any telephone numbers for the Certa Pro Business other than the telephone number(s) authorized by Certa Pro as set forth in Schedule A. Franchisee acknowledges that such telephone number(s) are the sole property of Certa Pro but, use thereof, shall be paid for by Franchisee. In addition to the telephone number(s) authorized by Certa Pro, Franchisee further agrees to display in its advertising and other marketing or promotional materials, as well as in all business documents related to the Certa Pro Business (including without limitation contracts, purchase orders, invoices, stationery, and business cards) the toll-free telephone number designated by Certa Pro.

Franchisee hereby appoints Certa Pro and any of Certa Pro's officers as Franchisee's irrevocable attorney-in-law and in fact in all matters dealing with or concerning any and all telephone numbers used in connection with the Certa Pro Business or any telephone directory advertisements or listings containing those numbers, including but not limited to the execution at any time (whether before or after any termination of this Agreement) of any writings transferring to Certa Pro or to any person, firm or corporation designated by Certa Pro, any and all telephone number advertised or listed under the Certa Pro name or any of Certa Pro's trademarks, and this appointment shall survive the termination of this Agreement.  Franchisee shall execute a conditional assignment of telephone numbers in such form prescribed by Certa Pro as set forth in Schedule B.

6.6   <u>Identification of the Certa Pro Business</u>.   Franchisee shall be required to use the Certa Pro Proprietary Marks on all materials representing the Certa Pro Business, including without limitation business cards, stationary, yellow pages advertising, uniforms, checks, proposals, contracts, signage, truck advertising and marketing and promotional materials, provided Franchisee (i) accurately depicts the Certa Pro Proprietary Marks on the materials, (ii) includes a statement on the materials indicating that the business is independently owned and operated by Franchisee, (iii) does not use the Certa Pro Proprietary Marks in connection with any other trademarks, trade names or service marks unless specifically approved by Certa Pro in writing prior to such use, and (iv) makes available to Certa Pro, upon its request, a copy of any materials depicting the Certa Pro Proprietary Marks.

Any materials not furnished or made available by or through Certa Pro which the Franchisee wishes to use for public display, must first be submitted to Certa Pro for approval, which approval Certa Pro shall not unreasonably withhold, provided, however, that such materials are current, in good condition and in good taste.  Such materials must also accurately depict the Certa Pro Proprietary Marks and be used in manner so as to promote or strengthen Certa Pro brand recognition.

6.7   <u>Warranty Service</u>.   Franchisee agrees to offer and honor such warranty on all materials and workmanship sold by Franchisee as Certa Pro may designate from time to time in the *Standard Operating Procedures* section of the Operations Manual.  Franchisee shall cooperate with Certa Pro in all warranty claims and shall make no statements or admissions as to liability. Franchisee shall promptly report all warranty claims to Certa Pro and shall undertake all warranty work under the Proprietary Marks.  All costs associated with administering and honoring the warranty service shall be borne by the Franchisee including all costs referred to in Section 16.6.8 regarding Franchisee's obligations upon termination of this Agreement.

6.8   <u>Maintenance of Bank Accounts/Transfer of Funds</u>.   Franchisee agrees to provide Certa Pro with the name, address and telephone number of the bank or banks in which the bank account(s) maintained for the operation of the Certa Pro Business are located and to provide Certa Pro with all account numbers for such account(s) so that Certa Pro may arrange to have such funds as Franchisee may, from time to time, owe to Certa Pro transferred directly from Franchisee's bank account(s) into Certa Pro's accounts.  Franchisee further agrees to cooperate fully in arranging for the electronic transfer of funds from its accounts to Certa Pro's accounts and agrees to execute such documents or instruments as may be required by its bank(s) or Certa Pro's bank(s).

6.9   <u>Right to Inspect the Certa Pro Business</u>.   Franchisee agrees to permit Certa Pro or its authorized representatives to enter the Franchisee's premises or job sites at all reasonable

times during the business day for the purpose of making periodic evaluations and to ascertain if the provisions of this Agreement are being observed by Franchisee. In the event of any such inspection, Franchisee and its staff agree to cooperate fully with such inspection and shall provide Certa Pro or its authorized representative access to Franchisee's computer(s) and all programs and databases contained thereon. For purposes of this Agreement "premises" shall be deemed to mean any or all of the following locations: (i)  any location where the Franchisee regularly conducts the Certa Pro Business; (ii) any location where the Franchisee maintains the books and records (financial or otherwise) of the Certa Pro Business; or (iii) any location which the Franchisee uses in any manner in connection with the Certa Pro Business.

## ARTICLE 7 - OPERATIONS MANUAL

Franchisor will loan Franchisee one (1) copy of the Operations Manual and appropriate revisions as may be made from time to time, referred to collectively as the "Operations Manual." Franchisee agrees to operate its Certa Pro Business in strict compliance with the Operations Manual, as it may be reasonably changed from time to time. The Operations Manual shall be confidential and at all times remain the property of Franchisor. Franchisee shall not make any disclosure, duplication or other unauthorized use of any portion of the Operations Manual. The provisions of the Operations Manual constitute provisions of this Agreement as if fully set forth herein. Franchisee shall insure that its copy of the Operations Manual is current and up-to-date. If there is a dispute relating to the contents of the Operations Manual, the master copy maintained by Franchisor at its principal office shall be controlling. The cost of implementing any such changes, alterations or modifications as called for in the Operations Manual shall be borne exclusively by Franchisee.

## ARTICLE 8 - CONFIDENTIAL INFORMATION

8.1     Trade Secrets.  Franchisee agrees that it will not, during the term of this Agreement or thereafter, communicate or divulge to, or use for the benefit of any other person or entity, any confidential information (including the names of other Certa Pro franchisees and mailing lists), knowledge, or know-how made known to it by virtue of Franchisee's operation under the terms of this Agreement. Franchisee agrees to divulge such information only to such of its employees as must have access to it in order to operate the Certa Pro Business, provided however, that any such employee receiving such information shall have executed a secrecy and confidentiality agreement in such form prescribed by Certa Pro as set forth in Schedule C.  Any and all information, knowledge and know-how, including, without limitation, drawings, materials, equipment, and other data, which Certa Pro designates as confidential, shall be deemed confidential for purposes of this Agreement.

8.2     Non-Disclosure.  Franchisee acknowledges that it has had no part in the creation or development of, or claims any rights whatsoever in, any element of the Certa Pro System, the Certa Pro Proprietary Marks or any matters dealt with in the Operations Manual and that all disclosures made to Franchisee relating to the Certa Pro System are communicated to Franchisee solely on a confidential basis and as trade secrets. Franchisee agrees to maintain the confidentiality of all such information during the term of this Agreement and at all times thereafter.

## ARTICLE 9 - CERTA PRO PROPRIETARY MARKS

Certa Pro represents that it is the sole and exclusive owner of the Certa Pro Proprietary Marks and Franchisee hereby acknowledges and agrees that the Certa Pro Proprietary Marks are the exclusive property of Certa Pro and that Franchisee's right to use the Certa Pro Proprietary Marks is specifically conditioned upon the following terms and conditions:

9.1    Trademark Ownership.   The Certa Pro Proprietary Marks are valuable property owned by Certa Pro, and Certa Pro is the exclusive owner of all right, title and interest in and to the Certa Pro Proprietary Marks and all past, present or future goodwill of the Certa Pro Business which is associated with or attributable to the Certa Pro Proprietary Marks. Franchisee's use of the Certa Pro Proprietary Marks shall inure to the benefit of Certa Pro. Franchisee disclaims all right, title and interest in or to such goodwill and the Certa Pro Proprietary Marks and acknowledges and agrees that such goodwill and the Certa Pro Proprietary Marks are the exclusive property of Certa Pro. Franchisee shall not, during or after the term of this Agreement, engage in any conduct directly or indirectly which would infringe upon, harm or contest the rights of Certa Pro in any of the Certa Pro Proprietary Marks or the goodwill associated with the Certa Pro Proprietary Marks.

9.2    Use of the Certa Pro Proprietary Marks.   Franchisee may use the Certa Pro Proprietary Marks only in connection with the Certa Pro Business and only in a manner that accurately depicts the Certa Pro Proprietary Marks.   Such use of the Certa Pro Proprietary Marks shall be only as permitted by Certa Pro in the Operations Manual or as otherwise directed by Certa Pro. Franchisee shall comply with all trademark, trade name and service mark notice marking requirements. Franchisee shall conduct the Certa Pro Business in accordance with the standards and requirements pertaining to quality, production, signage, equipment, cleanliness, maintenance, appearance, service standards, method of operation and sales promotion prescribed by Certa Pro from time to time. Franchisee shall implement and abide by the requirements and recommendations of Certa Pro directed to enhancing substantial uniformity of the Certa Pro System. Franchisee may not use the "Certa Pro" name in its corporate name, except that Franchisee may use the name "Certa Pro" to indicate that it is doing business as "Certa Pro" but only upon (i) obtaining Certa Pro's prior written permission; (ii) obtaining a "dba" (doing business as) certificate from the state or local agency responsible for issuing such certificates which puts the public on notice that Franchisee and Certa Pro are separate legal entitites; and (iii) filing a copy of such dba certificate with Certa Pro.   All stationary, business cards, and contractual agreements into which Franchisee enters shall contain Franchisee's corporate or fictitious name and a conspicuously displayed notice that Franchisee opertes his Certa Pro Business as an independently owned and operated franchise of Certa Pro. Franchisee may also use the "Certa Pro" name is such other manner as Certa Pro may specify from time to time.

9.3    Litigation.   In the event any person or entity improperly uses or infringes the Certa Pro Proprietary Marks, Certa Pro shall control all litigation and shall be the sole judge as to whether suit shall be instituted, prosecuted or settled, the terms of settlement, and whether any other action shall be taken. Franchisee shall promptly notify Certa Pro of any such use or infringement of which the Franchisee is aware. Franchisee shall promptly inform Certa Pro of any claim arising out of Franchisee's use of any Certa Pro Proprietary Marks and shall cooperate with any action undertaken by Certa Pro in respect thereof.

9.4   Substitutions.   If there is a claim by any party that its rights to use any of the Certa Pro Proprietary Marks are superior and if Certa Pro determines that such claim is legally meritorious, then upon receiving written notice from Certa Pro, the Franchisee will, at its expense, immediately make such changes and use such substitutions to the Certa Pro Proprietary Marks as may be required by Certa Pro.   Franchisee will not make any changes or substitutions whatsoever in or to the use of the Certa Pro Proprietary Marks unless directed by Certa Pro in writing.

9.5   Revisions to the Proprietary Marks.   Recognizing that variations and additions to the Certa Pro Proprietary Marks may be required from time to time in order to preserve and enhance the public image of the Certa Pro System, to accommodate changing consumer trends, and to ensure the continuing efficiency and profitability of franchisees in the Certa Pro System generally, Franchisee acknowledges and agrees that Franchisor may from time to time hereafter, upon notice and acting reasonably, revise the Certa Pro Proprietary Marks, including the adoption and use of new or modified trademarks and trade names, and Franchisee agrees to promptly accept, implement, use and display all such changes, alterations and modifications. The cost of implementing any such changes, alterations or modifications shall be borne exclusively by Franchisee, provided however, that Franchisee shall be permitted to deplete any existing supplies of stationery, advertising or marketing materials which Franchisee has on hand at the time of such revisions to the Certa Pro Proprietary Marks.

## ARTICLE 10 - RESTRICTIVE COVENANTS AND TRADE SECRETS

10.1   During the Term of This Agreement.   During the term of this Agreement, neither Franchisee, its partners or shareholders nor any member of the immediate family of Franchisee or its partners or shareholders shall, directly or indirectly, for itself or through, on behalf of, or in conjunction with any other person, partnership, corporation or other entity own, maintain, engage in, be employed by, or have any interest in any other business which offers or sells products or services of the type offered under the Certa Pro System or building maintenance services; provided, however, that this paragraph shall not apply to Franchisee's operation of any other Certa Pro franchise.   Franchisee may not provide any unauthorized services, advertise its services under any mark other than the Proprietary Marks or use any software or computer programs except as approved by Certa Pro.

10.2   After the Term of This Agreement.   For a period of three (3) years after the expiration and nonrenewal, transfer or termination of this Agreement, regardless of the cause, neither Franchisee, its partners or shareholders nor any member of the immediate family of Franchisee or its partners or shareholders shall, directly or indirectly, for itself or through, on behalf of, or in conjunction with any other person, partnership, corporation or other entity own, maintain, engage in, be employed by, or have any interest in any other business which offers or sells products or services of the type offered under the Certa Pro System within a radius of twenty (20) miles as the crow flies of the Territory, or five (5) miles of any other Certa Pro franchise's territory in operation, or of any territory which is being considered or discussions are under way for a Certa Pro franchise, as of the date of expiration and nonrenewal, transfer or termination of this Agreement; provided, however, that Franchisee may continue to operate any other Certa Pro System franchise for which Franchisee and Franchisor have a then-current franchise agreement.

For a period of three (3) years after the expiration and nonrenewal, transfer or termination of this Agreement, regardless of the cause, neither Franchisee, its partners or shareholders nor any member of the immediate family of Franchisee or its partners or shareholders shall, directly

or indirectly, for itself or through, on behalf of, or in conjunction with any other person, partnership or corporation solicit business from then existing or prospective Certa Pro National Account or customers with whom Franchisee's former Certa Pro franchise did business in the preceding 5 years for any related or competitive business purpose nor solicit any employee of Franchisor or any other Certa Pro System franchisee to discontinue his employment.

For a period of three (3) years after the expiration and nonrenewal, transfer or termination of this Agreement, regardless of the cause, neither Franchisee, its partners or shareholders nor any member of the immediate family of Franchisee or its partners or shareholders shall, directly or indirectly, for itself or through, on behalf of, or in conjunction with any other person, partnership or corporation own, maintain, engage in, be employed by, or have any interest in any company which engages in any business competing in whole or in part with Certa Pro franchisees, solicits work for Certa franchisees which otherwise would fall under the National Account Program, or which grants franchises or licenses for any business competing in whole or in part with Franchisor.

10.3   Intent and Enforcement.   It is the intent of the parties that the provisions of this section shall, to the fullest extent permissible under applicable law, be judicially enforced; accordingly, the parties agree that any reduction in scope or modification of any part of the noncompetition provisions contained herein shall not render any other part unenforceable. In the event of the actual or threatened breach of this section by Franchisee, any of its partners or shareholders or any member of the immediate family of Franchisee or any of its partners or shareholders, Franchisor shall be entitled to an injunction, without bond, restraining such person from any such actual or threatened breach. Franchisee agrees that in the event of the actual or threatened breach of this section, Franchisor's harm will be irreparable and that Franchisor has no adequate remedy at law to prevent such harm. Franchisee further acknowledges and agrees that the provisions of this section shall be tolled during any default under this section.

10.4.   Employees.   Franchisee shall require its officers, directors, partners, shareholders, employees, subcontractor staff and members of the immediate family of Franchisee to execute a noncompetition agreement containing provisions similar to those set forth herein and in the form attached as Schedule D.

10.5.   Publicly-Owned Entity.   This section shall not apply to any ownership by Franchisee or any other person subject to this section of a beneficial interest of less than three percent (3%) in the outstanding securities or partnership interests in any publicly-held entity.

## ARTICLE 11 - ADVERTISING

The parties acknowledge the value of standardized advertising and marketing programs to the growth of goodwill and public image associated with the Certa Pro Proprietary Marks and the Certa Pro System. Franchisee therefore, agrees to actively promote the Certa Pro Business, to abide by all of Certa Pro's advertising requirements and to comply with the following provisions:

11.1   General Advertising Fund.

    11.1.1   Franchisee recognizes and acknowledges that uniform advertising and promotion by Certa Pro, both inside and outside of the Territory, contributes to the goodwill and public image of the Certa Pro System and the Certa Pro Business. Accordingly, Franchisee agrees that Certa Pro may institute, maintain and

administer a general advertising fund or funds (the "General Advertising Fund") for such national, regional and other advertising programs as Certa Pro, in its sole judgment, may deem necessary or appropriate to advertise and promote the Certa Pro System and the Certa Pro Business, including for both Residential and Commercial Services. Certa Pro shall have complete discretion as to the use and allocation of these funds.

11.1.2 During the Term of this Agreement, Franchisee shall make regular contributions to the General Advertising Fund to the General Advertising Fund in an amount equal to a percentage of Gross Sales as follows: (i) 3% on the first $500,000 of Gross Sales in a calender year; (ii) 2% of the next $500,000 of Gross Sales in a calender year; and (iii) 1% on all Gross Sales over $1,000,000 in a calender year.

| AMOUNT OF GROSS SALES | CONTRIBUTION |
|---|---|
| $0.00 - $500,000 | 3.0% |
| $500,001 - $1,000,000 | 2.0% |
| $1,000,001 and over | 1.0% |

Contributions to the General Advertising Fund shall be payable at the same time and in the same manner as Royalty Fees are payable.

11.1.3 Contributions to the General Advertising Fund shall be accounted for separately from the other funds of Certa Pro. Such contributions may be used to pay for any of Certa Pro's direct program costs and/or related overhead expenses related to administration of the General Advertising Fund, including reasonable salaries, accounting and administrative costs incurred by Certa Pro. A statement of the operations of the General Advertising Fund shall be prepared annually and shall be made available to Franchisee upon request. The cost of preparing such statement shall be paid for out of the General Advertising Fund.

11.1.4 Contributions to the General Advertising Fund shall be used and disbursed by Certa Pro for national, regional and/or local advertising, for promotional events and materials, market research costs, creative and production costs as well as to pay Certa Pro for any advertising and/or promotional materials produced by Certa Pro.

11.1.5 The selection of media and locale for media placement, the nature of promotional programs and the content of advertising and promotional material shall be at Certa Pro's sole discretion and Certa Pro may engage the services of an advertising agency or agencies to formulate, develop, produce and conduct any or all such advertising and promotion, the cost of which shall be payable from the General Advertising Fund. Certa Pro shall not assume any direct or indirect liability or obligation whatsoever towards Franchisee with respect to the direction or administration of the General Advertising Fund.

11.1.6 Franchisee understands and acknowledges that the General Advertising Fund is not intended to promote the business of a single franchisee or specific group of franchisees, but rather is intended to promote public recognition of the Certa Pro

Proprietary Marks and to benefit Certa Pro and all Certa Pro franchisees systemwide. Accordingly, Franchisee understands and agrees that expenditures made from the General Advertising Fund may not directly benefit the Franchisee and that expenditures from the General Advertising Fund in the Franchisee's market area may not necessarily be proportionate to Franchisee's contribution to the General Advertising Fund.

11.2   Local Advertising.

11.2.1 Franchisee acknowledges and agrees that to effectively compete within the Territory, Franchisee must undertake and execute an extensive marketing and advertising program designed to promote the Certa Pro Business within the Territory. Therefore, in addition to making contributions to the General Advertising Fund, Franchisee shall, at Franchisee's cost and expense, market, advertise and promote the Certa Pro Business in the Territory and shall:

(i)     list separately, or participate in a listing, in the Yellow Pages of its local telephone directory containing such copy and be of such size as may reasonably be specified by Certa Pro. The cost of such listing shall be paid by the Franchisee, or by the Franchisee and other participating franchisees in the case of a joint listing. Franchisee must also maintain at least one white pages listing in the local telephone directory serving the Territory;

(ii)    market, advertise and promote the Certa Pro Business in the Territory only in a manner that will reflect favorably on Certa Pro, the Franchisee, the services and products offered by Franchisee, and the good name, goodwill and reputation of Certa Pro and the Certa Pro Business; and

(iii)   not use any advertising or other marketing or promotional materials furnished by Certa Pro or any other materials containing therein, thereon or therewith any of the Certa Pro Proprietary Marks, for any purpose other than to market and promote the Certa Pro Business. Franchisee shall furthermore not copy or otherwise duplicate any advertising or promotional materials prepared by or for, or furnished by, Certa Pro without the Certa Pro's prior written consent.

11.2.2 In addition to contributions to the General Advertising Fund, Franchisee shall spend on local advertising (either by way of direct promotion or participation in a local advertising cooperative with other Certa Pro franchisees), an amount equal to a percentage of Gross Sales as follows: (i) 6% on the first $500,000 of Gross Sales in a calender year; (ii) 4% of the next $500,000 of Gross Sales in a calender year; and (iii) 3% on all Gross Sales over $1,000,000 in a calender year.

| AMOUNT OF GROSS SALES | CONTRIBUTION |
| --- | --- |
| $0.00 - $500,000 | 6.0% |
| $500,001 - $1,000,000 | 4.0% |
| $1,000,001 and over | 3.0% |

Notwithstanding the foregoing, for a period of 1 year following the date you begin operating your business, you shall expend an amount equal to 10% of your Gross Sales on local advertising.

Such advertising shall be restricted to the Territory or, in the case of advertising cooperatives, Franchisee shall assure that such advertising shall directly benefit the Territory. Franchisee shall, on the last days of June and December in each year, and at such other time or times as Certa Pro may reasonably request, provide to Certa Pro with evidence that such monies have been expended in the previous six months and a report of the manner in which such monies have been expended.

In the event Franchisee shall not have spent the foregoing amounts on local advertising in any twelve month period ending on December 31, Franchisee shall make an additional contribution to the General Advertising Fund in an amount equal to the difference between the amount payable pursuant to the above table and the amount actually spent by the Franchisee on local advertising.

11.3    Approval of Marketing, Advertising and Promotional Materials.  Franchisee shall use only such marketing, advertising or promotional materials as are furnished, approved or made available by or through Certa Pro. Such marketing, advertising or promotional materials shall be used only in a manner prescribed by Certa Pro. Any marketing, advertising or promotional materials not furnished or made available by or through Certa Pro which the Franchisee wishes to use, must first be submitted to Certa Pro for approval, which approval Certa Pro shall not unreasonably withhold, provided, however, that such materials are current, in good condition and in good taste. Such materials must also accurately depict the Certa Pro Proprietary Marks and be used in manner so as to promote or strengthen Certa Pro brand recognition.

Franchisee shall not at any time transfer such materials to any third party, other than a licensee authorized to sell the products depicted in such materials, without Certa Pro's prior written consent. Any promotional materials used by Franchisee shall be current and in good condition.

11.4    Ownership of Advertising Materials.  Franchisee acknowledges and agrees that Certa Pro is the sole and exclusive owner of all copyrights in any and all marketing, advertising or promotional materials made available to Franchisee which have been prepared by or on behalf of Certa Pro or contain any of the Certa Pro Proprietary Marks and that such materials shall at all times remain the exclusive property of Certa Pro.

## ARTICLE 12 - ACCOUNTING, RECORDS, REPORTS, AUDITS AND INSPECTIONS

12.1    Bookkeeping and Accounting Records.  Franchisee agrees to establish a bookkeeping and accounting system conforming to such requirements as are prescribed by Certa Pro in its Operations Manual from time to time. In the event that Certa Pro establishes computerized bookkeeping or accounting system for its franchisees, Franchisee agrees to utilize such systems and pay all reasonable fees charged by Certa Pro or others for the use of such systems and to purchase or lease all computer hardware and software required for such systems.

12.2    Business Records.  Franchisee agrees to establish a record-keeping system conforming to such requirements  as are prescribed by Certa Pro in its Operations Manual from time to time. Among other things, such record-keeping system shall include a complete record

of all work performed in connection with the Certa Pro Business (including copies of all estimates, proposals and contracts) and a complete listing of all work performed by any sub-contractors engaged by Franchisee (including copies of all contracts, invoices or statements). Franchisee shall make such records available for inspection by Certa Pro or its authorized representatives during regular business hours in order to determine that Franchisee has complied with the record-keeping provisions of this Agreement.

12.3   Financial Reports and Inspections.   Franchisee agrees to submit to Certa Pro the following:

     12.3.1   Monthly Reports.   On or before the tenth (10th) day of each month a monthly statement of Gross Sales for the prior month, on the Gross Sales Report forms designated by Certa Pro.

     12.3.2   Annual Reports.   On an annual basis, profit and loss statements and balance sheets prepared in accordance with generally accepted accounting principles. Annual reports shall be submitted to Certa Pro within ninety (90) days following the end of the Franchisee's fiscal year.

     Certa Pro reserves the right to require the submission of the Franchisee's profit and loss statement and balance sheet on a more frequent basis (semi-annually, quarterly or monthly) if, in Certa Pro's opinion, the Franchisee demonstrates operational or financial difficulties. Franchisee understands and agrees that a determination by Certa Pro that such reports shall be submitted on a more frequent basis shall be final and further agrees to provide such reports at such times as Certa Pro requires.

     12.3.3   Tax Returns.   Within thirty (30) days of filing, a true copy of all state, federal and local income tax returns, together with all accompanying schedules, filed by Franchisee in respect of the Certa Pro Business.

12.4   Inspection and Audit of Books and Payroll Records.   Franchisee agrees to permit Certa Pro, through its authorized representatives and agents, to inspect Franchisee's records, premises and methods of operation from time to time during regular business hours in order to determine that Franchisee has complied with the quality control and sales reporting provisions of this Agreement. Certa Pro shall have the right to inspect all Franchisee's financial and payroll records which shall include, but shall not be limited to the following: bank statements; check registers; canceled checks; all Federal, state and local income, sales and gross receipts tax returns; all Federal, state and local payroll tax returns, Form W2's and Form 1099's; financial statements; general ledgers; computer generated reports; payroll records; workers' compensation audit reports; purchase orders and invoices, and disbursement records including subcontractor files.

12.5   Fee Adjustments for Underpayment.   In the event that any such examination or audit discloses that Franchisee has not paid or has underpaid Certa Pro any amounts that it is entitled to receive under this Agreement, Franchisee agrees to pay to Certa Pro, within ten (10) days after receipt of written notice, any amount due to Certa Pro as determined by either (a) the financial statements or reports prepared by Franchisee's accountant as required by this Agreement or (b) the audit inspection performed by Certa Pro or its authorized agent in accordance with Section 12.4 of this Agreement. If such an examination discloses any

underpayment of the amounts required to be paid to Certa Pro, then Franchisee shall pay, in addition to the amount owed, interest on the unpaid amount at the rate of one and one half percent per month (18% per annum) or at the maximum rate permitted by law, whichever is less, from and after the date Certa Pro notifies Franchisee of such underpayment.

In the event that any such examination or audit discloses an understatement of Franchisee's Gross Sales or a variance of 3% or more from the data reported to Certa Pro in respect of any item which is material to the computation of fees due to Certa Pro, in addition to any other rights it may have, Certa Pro may conduct such further periodic audits and/or examinations of Franchisee's books and records as Certa Pro reasonably deems necessary for up to two years thereafter and such further audits and/or examinations shall be at Franchisee's sole expense, including without limitation, professional fees, travel, and room and board expenses directly related thereto.  Furthermore, if Franchisee intentionally understates or underreports Gross Sales, or if a subsequent audit or examination conducted within the two-year period discloses any understatement or variance of 3% or more, in addition to any other remedies provided for in this Agreement, at law or in equity, Certa Pro shall have the right to terminate this Agreement immediately.

In order to verify the information supplied by the Franchisee, Certa Pro may reconstruct Franchisee's sales through any reasonable method of analyzing and reconstructing sales. Franchisee agrees to accept any such reconstruction of sales unless Franchisee provides evidence in a form satisfactory to Certa Pro of Franchisee's sales within a period of 14 days from the date of notice of understatement or variance.

12.6   Credit and Trade References.   Franchisee hereby authorizes Certa Pro to make inquiries of Franchisee's bankers, suppliers and other trade creditors as to their dealings with Franchisee in relation to the Certa Pro Business, to discuss the affairs, finances and accounts of the Certa Pro Business (and by its execution hereof Franchisee authorizes and directs such bankers, suppliers and other trade creditors to discuss with Certa Pro the affairs, finances and accounts of the Certa Pro Business) and to obtain information and copies of invoices relating to sales or other dealings with all such persons and Franchisee in any way relating to the Certa Pro Business.  Franchisee agrees upon the request of Certa Pro, to execute and deliver such documents as are required in order to permit such bankers, suppliers or other trade creditors to release or disclose any such information and documents to Certa Pro.

## ARTICLE 13 - INSURANCE

13.1   Types of Insurance.   Franchisee agrees, at its sole cost and expense, to obtain and maintain in full force and effect throughout the Term hereof, such types and amounts of insurance as are set forth in the Operations Manual.  The parties acknowledge that current requirements include the following types of insurance:

13.1.1 Worker's Compensation Insurance.   Worker's compensation policy in such form and amounts as prescribed by Certa Pro from time to time, but in no event shall such insurance be in a form and for such lesser amounts as may be required by the laws of the state(s) which has jurisdiction over the Certa Pro Business.

13.1.2 Automobile Liability Insurance.   Automobile liability policy in a minimum amount of $300,000 single limit, or such other amount as shall be required under the Operations Manual from time to time.

13.1.3 <u>General Liability Insurance</u>.   Comprehensive general liability insurance, including products liability and broad form contractual liability, in an amount of not less than $2,000,000 in the aggregate and $1,000,000 per occurrence or such other amounts as may be required under the Operations Manual from time to time. Each policy shall name Certa Pro as an additional named insured, and shall provide that the policy cannot be canceled without thirty (30) days prior written notice to Certa Pro and shall insure the contractual liability of Franchisee.

Prior to the commencement of operations, Franchisee shall furnish to Certa Pro a Certificate of Insurance reflecting that the insurance coverage is in effect together with a copy of all such insurance policies. All policies shall be renewed annually throughout the Term of this Agreement and Franchisee shall cause a renewal Certificate of Insurance for each required coverage to be mailed to Certa Pro prior to the expiration of such coverage. Each policy shall name Certa Pro as an additional insured, and shall provide that the policy cannot be canceled without thirty (30) days prior written notice to Certa Pro and shall insure the contractual liability of Franchisee.

Franchisee understands and acknowledges that the foregoing amounts of coverage are minimum amounts and do not represent a recommendation by Certa Pro as to the amount of insurance coverage the Franchisee should maintain for the Certa Pro Business. Franchisee further understands and acknowledges that it is Franchisee's sole responsibility to determine the proper insurance coverage that is appropriate to protect the Franchisee's interests and that Franchisee should seek the consultation and advice of an independent insurance broker to assist the Franchisee in making an informed determination.

13.2   <u>Placement of Insurance by Certa Pro</u>.   If Franchisee fails to take out or keep in force any insurance referred to in Section 13.1 above, or should any such insurance not be as provided in Section 13.1 above, Certa Pro may in its sole discretion, without assuming any obligation in connection therewith, purchase such insurance and charge the cost thereof to Franchisee. Franchisee shall immediately reimburse Certa Pro for all costs incurred by Certa Pro in connection with the placement of such insurance.

13.3   <u>Third Party Sub-Contractors - Insurance</u>.   Franchisee shall not permit any third party sub-contractor to perform any work or offer any services on behalf of the Franchisee in respect of the Certa Pro Business unless such sub-contractor maintains insurance coverage in such amounts and types as Franchisee is required to maintain under the provisions of this Article 13 and such insurance names Certa Pro as an additional insured. Franchisee shall maintain evidence of such insurance by its subcontractors and provide such proof of insurance as Certa Pro may require in its sole discretion from time to time.

## ARTICLE 14 - SALE, ASSIGNMENT, TRANSFER AND ENCUMBRANCES

14.1    <u>Assignment by Franchisee.</u>

14.1.1  Franchisee acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Certa Pro has granted to Franchisee the rights and license contained herein in reliance on Franchisee's business skill and financial capacity (and if Franchisee is a corporation, then in reliance upon the owner's business skill and financial capacity). Accordingly, Franchisee agrees not to sell, assign, sub-franchise, transfer, convey, give away, pledge, mortgage, lease or otherwise encumber any interest in this Agreement without the prior written consent of Certa Pro. Any purported assignment or transfer, by operation of law or otherwise, without the prior written consent of Certa Pro, shall be null and void and shall constitute a material breach of this Agreement.

14.1.2  Certa Pro agrees not to unreasonably withhold its consent to a transfer of any interest of Franchisee in this license; provided however, that prior to the time of transfer, Franchisee fulfills the terms of the transfer policy of Certa Pro which is then in effect. Certa Pro may, as part of such policy and in its sole discretion require that:

(i)     all of Franchisee's accrued monetary obligations to Certa Pro and all other outstanding obligations related to the Certa Pro Business shall have been satisfied;

(ii)    Franchisee shall have executed a general release under seal, in a form satisfactory to Certa Pro, of any and all claims against Certa Pro and its partners, officers, directors, shareholders and employees, in their corporate and individual capacities, including, without limitation, claims arising under federal, state and local laws, rules and ordinances;

(iii)   Franchisee agrees that it shall remain liable for all warranties granted by the Franchisee during the operation of the Certa Pro Business and that it shall perform all such remedial work as may be necessary to comply with the terms of such warranties, or, in the event that Franchisee is unable or otherwise fails to perform such warranty work, Franchisee agrees to pay to Certa Pro the cost to perform such warranty work plus a fifteen (15%) percent administration charge;

(iv)    the satisfaction of such other reasonable conditions as may be required by Certa Pro, in its sole discretion, including but not limited to, the assignee's demonstration of adequate business standards and character and financial capabilities and resources; the Franchisee having fully and adequately disclosed to the assignee all relevant financial information pertaining to the Certa Pro Business; the execution of all necessary licenses and other agreements; the assumption by the assignee of all responsibility for any warranty work; and completion by the assignee, assignee's principals or employees, as the case may be, of such training courses as are deemed necessary by Certa Pro (Certa Pro reserves the

right to revoke its consent to a transfer in the event assignee does not successfully complete all training requirements to Certa Pro's satisfaction;

(v)     upon obtaining consent from Certa Pro to the transfer of Franchisee's license, Franchisee shall pay to Certa Pro the then current transfer, training and processing fees; and

(vi)    Franchisee deliver such written assurances as Certa Pro may reasonably require from Franchisee that Franchisee shall observe and abide by all covenants, restrictions and agreements to be performed or observed by Franchisee in connection with Articles 7, 8, 9 and 10 hereof, and that such Articles shall survive any transfer or sale contemplated by Franchisee and shall remain enforceable against Franchisee.

14.2    <u>Right of First Refusal</u>.  Any party holding any interest in the Franchisee and who desires to accept a bona fide offer from a third party to purchase his or its interest in the Certa Pro Business shall notify Certa Pro in writing of each such offer, and Certa Pro shall have the right and option, exercisable within thirty (30) days after receipt of such written notification, to send written notice to the seller that Certa Pro or its nominee intends to purchase such seller's interest on the same terms and conditions offered by the third party.  Any material change in the terms of any offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Certa Pro or its nominee as in the case of an initial offer.  The failure of Certa Pro to exercise the option afforded by this Section 14.2 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Article 14 with respect to a proposed transfer.

14.3    <u>Sale of Shares or Other Interest in Franchisee</u>.   In the event Franchisee is a corporation or partnership, any transfer of ownership or control whatsoever, shall be deemed to be an assignment of this Agreement and shall be subject to all of the provisions of this Article 14. Franchisee agrees to provide, upon Certa Pro's request, a certificate certifying the then current shareholders, directors, officers, members, or partners, as the case may be, of Franchisee. Franchisee further agrees that it will cause the share certificates or other documents of ownership, to have typed or written thereon a legend stating that such shares or documents of title are subject to this Agreement and the restrictions on transfer or assignment contained herein.

14.4    <u>Assignment to Controlled Corporation</u>.  Franchisee may at any time after providing Certa Pro with thirty (30) days written notice, assign all of Franchisee's rights and obligations hereunder to a corporation, provided Franchisee is and throughout the term of this Agreement remains a principal executive officer of the corporation and the beneficial and registered owner of not less than fifty-one (51%) percent of the issued and outstanding voting shares of such corporation, and Franchisee agrees forthwith to:

14.4.1 cause the corporation and its directors, officers and shareholders to acknowledge this Agreement and to agree in writing to be bound by the provisions hereof and to execute such form of agreement as may be specified by Certa Pro relating to the assumption by the corporation of any rights and obligations under this Agreement in the form attached as Schedule E;

14.4.2 cause the corporation in its articles of incorporation to provide in effect that its objects or business are confined exclusively to the operation of the Certa Pro Business;

14.4.3 cause the corporation to restrict the issue of and its directors and shareholders to restrict the transfer of shares of the corporation so that Franchisee shall continuously own fifty-one (51%) percent of the issued and outstanding voting shares of the corporation, and cause the corporation to keep Certa Pro current as to the names and addresses of the directors and shareholders of and those persons financially involved in the corporation;

14.4.4 pay to Certa Pro all reasonable legal expenses and other fees and charges incurred by Certa Pro in connection with such assignment and the preparation, execution and filing of any of the documents referred to in this Section 14.4;

14.4.5 satisfy all accrued monetary obligations of Franchisee to Certa Pro and any governmental authority, prior to assignment or transfer;

14.4.6 cause the transferee corporation and all shareholders of the transferee corporation to enter into a written assignment and assumption of liability agreement under seal, in a form satisfactory to Certa Pro, with Franchisee and the transferee corporation, assuming all Franchisee's obligations hereunder;

14.4.7 cause all shareholders of the transferee corporation to enter into a written agreement, in a form satisfactory to Certa Pro, jointly and severally guaranteeing the full payment and performance of the transferee corporation's obligations to Certa Pro;

14.4.8 ensure that no new shares of common or preferred voting stock in the transferee corporation shall be issued to any person, persons, partnership, association or corporation without obtaining Certa Pro's prior consent, which shall not be unreasonably withheld; and

14.4.9 cause each stock certificate of the transferee corporation to have conspicuously endorsed upon it a statement that it is held subject to, and that further assignment or transfer thereof is subject to, all restrictions imposed upon transfers by the said agreement.

14.5    <u>Transfer of Assets</u>.   A sale or transfer of all or substantially all of the assets of the Franchisee's Certa Pro Business licensed hereunder shall be deemed an assignment or transfer and shall be subject to the provisions of this Article 14.

14.6    <u>Assignment By Certa Pro</u>.   Certa Pro may at any time sell, transfer or assign its interests in and to this Agreement.  In the event of such a sale, transfer or assignment by Certa Pro of this Agreement or any interest therein, to the extent that the purchaser, transferee or assignee shall assume the covenants and obligations of Certa Pro under this Agreement, Certa Pro shall thereupon and without further agreement, be freed and relieved of all liability with respect to such covenants and obligations.  The consent of Franchisee to such sale, transfer or assignment shall not be required and, notwithstanding any such sale, transfer or assignment, Franchisee shall continue to be fully bound by its obligations under this Agreement.

## ARTICLE 15 - DEATH OR PERMANENT DISABILITY

Upon the death or permanent disability of Franchisee or any person with any interest in this license or in Franchisee, or upon the dissolution of a Franchisee that is a partnership or corporation, the executor, administrator, personal representative or trustee of such person or entity (the "Personal Representative") agrees to transfer the Franchisee's interest to a third party approved by Certa Pro within a reasonable time.  Such transfers, including without limitation, transfers by devise or inheritance, shall be subject to the same conditions as any *inter vivos* transfer.

If, within six (6) months of the date of Franchisee's death or permanent disability the Personal Representative has not transferred Franchisee's interest in the license granted hereunder, this Franchise Agreement shall be automatically terminated and all rights and licenses granted hereunder shall likewise be deemed terminated and shall all revert to Certa Pro.

For purposes of this Agreement, Franchisee or any person with any interest in this license or in Franchisee, shall be deemed permanently disabled if, through *bona fide* illness, physical or mental, as certified by a duly qualified independent medical practitioner selected by Certa Pro, shall become unable to devote his full time and attention during normal business hours to the Certa Pro Business for a period of 90 consecutive days in any period of 12 consecutive calendar months (the "Period of Disability").

The Period of Disability shall be deemed to commence on the first day that the Franchisee, or any person with any interest in this license or in Franchisee, does not attend to the business and affairs of the Certa Pro Business on a full-time basis, statutory holidays and vacation time excepted.  In calculating the duration of the Period of Disability, unless and until the Franchisee, or any person with any interest in this license or in Franchisee, shall have returned to attending to the business and affairs of the Certa Pro Business on a full-time basis for 20 consecutive days (statutory holidays and vacations excepted), the Period of Disability shall be deemed to have continued without interruption whatsoever.

## ARTICLE 16 - TERMINATION

16.1    Termination of Rights.   Upon termination of this Agreement for any reason whatsoever or upon its expiration, all of the rights and licenses granted to Franchisee hereunder shall terminate.

16.2    Certa Pro's Options

16.2.1 Certa Pro's Option to Rescind.  Certa Pro may, before the completion of Franchisee's Initial Franchisee Training, in its sole and absolute discretion rescind this Agreement and refund the Initial Franchise Fee to Franchisee.  Upon recission, all of the rights and licenses granted to Franchisee hereunder shall terminate.  Notwithstanding, Franchisee acknowledges and agrees that he or she shall remain bound, even after rescission of this Agreement, to those obligations contained in Article 8 relating to confidentiality and non-disclosure.

16.2.2 Certa Pro's Option to Terminate.   If Franchisee has not commenced operation of the Certa Pro Business licensed hereunder within 120 days of the Effective Date,

Certa Pro shall have the option to terminate this Agreement by giving the Franchisee twenty (20) days written notice of its intention to terminate this Agreement and all licenses granted hereunder (the "Termination Notice").  If the Franchisee has not commenced operation of the Certa Pro Business before the expiration of said twenty (20) day period specified in the Termination Notice, the rights and obligations of the parties hereunder shall immediately terminate.  Upon such termination, the parties shall deliver to each other such releases and other instruments as Certa Pro may reasonably require so as to fully terminate any and all agreements between the parties, whether written or verbal or express or implied.  Upon receipt of such releases and other instruments, Certa Pro agrees to refund to Franchisee $10,000 of the Initial Franchise Fee.

16.3    Termination By Certa Pro With Opportunity to Cure.   Certa Pro shall have the right to terminate this Agreement and the rights granted hereunder (provided however that Articles 7, 8, 9 and 10, shall continue in full force and effect for the periods therein specified), without prejudice to the enforcement of any other legal right or remedy, if any of the following defaults remain uncured after expiration of the cure period:

>    16.3.1  if,  Franchisee fails to make any payment under this Agreement, when due, and such default shall continue for a period of ten (10) days after written notice thereof has been given to Franchisee;

>    16.3.2  if Franchisee shall breach any of the terms or conditions of this Agreement or fail to observe or perform or comply with any of the rules, bulletins, directives or other notices issued by Certa Pro or set forth in the Operations Manual  and such breach or failure shall continue for a period of ten (10) days after written notice thereof has been given to Franchisee:

>    16.3.3  if final judgment is rendered in an amount in excess of $10,000 by any court against either Franchisee or any guarantor hereunder and such judgment shall not be discharged, varied or execution thereof stayed within twenty (20) days after entry thereof or within such time period as action must be taken in order to discharge, vary or stay execution of the judgment, whichever shall be the earlier;

>    16.3.4  if Franchisee or any agent or representative of Franchisee:

>>        16.3.4.1    fails to submit any report required under this Agreement within ten (10) days of the date such report is due; or

>>        16.3.4.2    if Franchisee materially distorts any material information pertaining to the Certa Pro Business, or fails to maintain its records in a manner which permits a determination of Gross Sales, unless Franchisee proves to the satisfaction of Certa Pro that it had no knowledge of such distortion.

16.4    Termination By Certa Pro Without Opportunity to Cure.   Certa Pro may terminate this Agreement and all rights granted hereunder at any time, without a right or opportunity to cure, upon written notice of termination, in the event of any of the following:

>    16.4.1  three (3) repetitions of the same breach within any twelve (12) month period, for which Certa Pro has provided notice and an opportunity to cure;

16.4.2 the Franchisee's omission or misrepresentation of any material fact relevant to the decision of Certa Pro to enter into this Agreement;

16.4.3 any transfer of the license granted hereunder which is not in compliance with Article 14 of this Agreement;

16.4.4 subject to the provisions of Article 15 hereof, if Franchisee (or if Franchisee is a corporation, its controlling shareholder(s)) or any guarantor hereunder shall die or otherwise become permanently disabled;

16.4.5 if Franchisee or any guarantor hereunder makes or permits the making of any unauthorized copies of any portion of the confidential information, proprietary materials or the Operations Manual;

16.4.6 if Franchisee fails to meet the Performance Criteria set forth in Section 6.1;

16.4.7 if Franchisee has committed, undertaken or otherwise been involved in fraudulent conduct in relation to it dealings with Certa Pro; or

16.4.8 fraudulent reporting of financial or operational information to Certa Pro;

16.4.9 if Franchisee is charged and convicted by a court having competent jurisdiction of committing an act of theft, fraud, or other offense involving moral turpitude or any felony;

16.4.10 abandonment by Franchisee of the franchise operation, defined as failure to operate the Certa Pro Business for fifteen (15) consecutive days after commencement of operations;

16.4.11 if Franchisee ceases or threatens to cease business, or takes or threatens to take any action to liquidate its assets, or stops making payments in the usual course of business;

16.4.12 if either Franchisee or any guarantor hereunder makes or attempts to make a general assignment for the benefit of creditors or a bulk sale of their assets, institutes or has instituted against either of them any proceeding relating to insolvency or bankruptcy, has a custodian, receiver or similar person appointed over all or part of Franchisee's business, or in the event any lessor, lienholder or other similar party lawfully entitled to do so, takes possession of any of the assets or property of Franchisee, or if Franchisee or guarantor hereunder commits or suffers any default under any contract or lease pertaining to the Certa Pro Business;

16.4.13 if Franchisee or any guarantor hereunder is a corporation, in the event a proceeding is instituted for the winding-up, dissolution, liquidation or merger of such entity, whether such proceeding is voluntary or involuntary, or in the event of a forfeiture or other loss of Franchisee's or guarantor's charter;

16.4.14     a violation of any of the in-term covenants not to compete or of the covenants of non-disclosure of trade secrets set forth in this Agreement; or

16.4.15     other acts which may bring discredit on the entire franchise organization such as, but not limited to, willful acts of dishonesty toward Certa Pro, property owners, insurers, and other third parties dealing with Franchisee, Certa Pro or other franchises;

16.5   Effect of Termination.   Upon expiration or termination of this Agreement for any reason whatsoever, Franchisee shall:

16.5.1  immediately upon Certa Pro's request, so as to protect the Certa Pro Proprietary Marks and other proprietary rights and Certa Pro's other franchisees, permit Certa Pro to cure any default by Franchisee, to operate any truck or equipment for Certa Pro's account and to secure Franchisee's complete and timely compliance with the other obligations set forth in this Section 16.6. Franchisee shall immediately reimburse Certa Pro for all costs incurred by Certa Pro in connection with Certa Pro's action to cure any such defaults. Franchisee understands and agrees that any cure by Certa Pro of Franchisee's breach of this Agreement will not, under any circumstances whatsoever, operate as a reinstatement of this Agreement.

16.5.2  within ten (10) days after such expiration or termination, pay to Certa Pro all outstanding royalties, advertising fees and other charges due and payable by Franchisee to Certa Pro;

16.5.3  immediately discontinue the operation of the Certa Pro Business, the Certa Pro System and the use of the Certa Pro Proprietary Marks and other proprietary rights licensed under this Agreement, and any other similar names or marks, or any other designations or marks associating Franchisee with Certa Pro or the Certa Pro System and any conduct that might tend to give the general public the impression that it is associated with Certa Pro or the Certa Pro System;

16.5.4  promptly execute such instruments or take such actions as may be necessary to discontinue Franchisee's use of any fictitious business name containing any of the Certa Pro Proprietary Marks and to remove Franchisee's listing as a Certa Pro franchisee from the telephone classified pages (yellow pages), as well as any other telephone directories or trade or business directories;

16.5.5  within ten (10) days after such expiration or termination, return to Certa Pro all copies of the Operations Manual as well as any and all other confidential or proprietary materials including, but not limited to, the Certa Notes and other software owned and developed by Certa Pro and any copies thereof;

16.5.6  within ten (10) days after such expiration or termination, make available to Certa Pro for inspection all vehicles and equipment for the purpose of allowing Certa Pro to confirm the removal of all identification with respect to the Certa Pro System and the Certa Pro Proprietary Marks;

16.5.7 within ten (10) days after such expiration or termination, take all actions and execute all instruments that may be necessary to assign all telephone numbers and listings used in connection with the Certa Pro Business to Certa Pro or any other party designated by Certa Pro, or, at Certa Pro's option, to cancel all such telephone numbers or listings; and

16.5.8 fulfill all of its obligations to customers under all outstanding contracts and any warranties provided pursuant to Section 6.8 hereof notwithstanding the expiration or termination of this Agreement. In order to ensure that Franchisee honors these obligations, within fourteen (14) days after such expiration or termination, Franchisee shall pay to Certa Pro the greater of: (i) 2% or Franchisee's total Gross Sales for the preceding 24 months, or portion thereof, or (ii) $15,000. Certa Pro shall return such monies, less any amount expended to satisfy Franchisee's outstanding obligations, upon Certa Pro's satisfaction that Franchisee has satisfied all of its obligations pursuant to this section.

16.6   Additional Remedies.   Franchisee expressly consents and agrees that, in addition to any other remedies Certa Pro may have at law, Certa Pro may obtain an injunction and/or appointment of a receiver of the Certa Pro Business to terminate or prevent the continuation of any existing default, or to prevent the occurrence of any threatened default by Franchisee of this Agreement.

16.7   Survival of Covenants.   Notwithstanding the termination of this Agreement for any reason whatsoever, all covenants and agreements to be performed or observed by Franchisee or any guarantor under this Agreement or which by their nature survive the expiration or termination of this Agreement, including those set out in Articles 7, 8, 9 and 10 hereof, shall survive any such termination.

16.8   Failure to Act Not to Affect Rights.   Certa Pro's failure to exercise any rights or remedies to which it is entitled to under this Article 16 shall not constitute a waiver of, or otherwise serve to prevent Certa Pro from exercising any other rights or remedies to which it may be entitled either under said Article 16 or elsewhere in this Agreement. The acceptance by Certa Pro of any amount under this Agreement after the happening of any event provided for in either Section 16.3 or 16.4 above, shall not under any circumstance constitute a waiver by Certa Pro of any rights or remedies to which it may be entitled. No waiver of the happening of any event under either Section 16.3 or 16.4 above on any one occasion shall be deemed to be a waiver by Certa Pro of any subsequent happening of any such event. All monies received by Certa Pro from Franchisee or any guarantor hereunder may be applied to their respective indebtedness to Certa Pro as Certa Pro, in its sole discretion, may choose.

## ARTICLE 17 - SECURITY TO FRANCHISOR

17.1   Security Agreement.   Franchisee agrees, so as to secure payment and performance of any and all obligations from time to time owing by Franchisee to Certa Pro, to provide, at the request of Certa Pro, a security interest or interests by a security agreement in the form attached hereto as Schedule E, in such form as is provided by Certa Pro, in such of the inventory, equipment, and other assets of the Certa Pro Business and in such amount or amounts and upon such terms as Certa Pro, in its absolute discretion, shall require. Any failure to provide such security within ten (10) days following the receipt by Franchisee of a written

request specifying the nature and extent of the security required, shall be deemed to be a material default under this Agreement.

17.2     Other Agreements.   Franchisee agrees to execute or cause to be executed such other guarantees or instruments as Certa Pro may reasonably require from time to time to secure the payment and performance of any and all obligations from time to time owing by Franchisee to Certa Pro including a personal guaranty in the form attached hereto as Exhibit G.

## ARTICLE 18 - DISPUTE RESOLUTION

18.1   Mediation.

18.1.1 Subject to Section 18.1.2, all claims or disputes between Franchisee and Certa Pro or its affiliates arising out of, or in any way relating to, this Agreement, or any of the parties' respective rights and obligations arising out of this Agreement, shall be submitted first to mediation before Certa Pro's president at Certa Pro's headquarters in Oaks, Pennsylvania.  Prior to the Mediation and before commencing any legal action against Certa Pro or its affiliates with respect to any such claim or dispute, Franchisee must submit a notice to Certa Pro, which specifies in detail, the precise nature and grounds of such claim or dispute.

18.1.2 Certa Pro shall not be required to first attempt to mediate a controversy, dispute or claim against Franchisee through mediation as set forth in section 18.1.1 if such controversy, dispute or claim concerns an allegation by Certa Pro that Franchisee has violated (or threatens to violate, or poses an imminent risk of violating):

1.     any of Certa Pro's federally protected intellectual property rights in the Certa Pro Proprietary Marks, the Certa Pro System or in any of Certa Pro's Confidential Information;

2.     Any claims pertaining to or arising out of or pertaining to any warranty issued; or

3.     any of the restrictive covenants contained in this Agreement

18.2   Arbitration.  If not resolved by mediation, all disputes and claims relating to this Agreement or any other agreement entered into between the parties, the rights and obligations of the parties, or any other claims or causes of action relating to the making, interpretation, or performance of either party under this Agreement shall be settled by arbitration in Philadelphia, Pennsylvania in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association ("AAA").  The right and duty of the parties to this Agreement to resolve any disputes by arbitration shall be governed by the Federal Arbitration Act, as amended.  The following shall supplement and, in the event of a conflict, shall govern any arbitration:  If the claim is for less than $30,000 than the matter shall be heard before a single arbitrator.  If the claim, or a counterclaim, is for $30,000 or more, the matter shall be heard before a panel of three (3) arbitrators and each party shall appoint its own arbitrator, and the appointed arbitrators shall appoint a "neutral" arbitrator from the AAA's list of arbitrators.  Each party must bear its own costs of arbitration including the fee for their respective arbitrator;

provided, however, that the neutral or the single arbitrator's fee shall be shared equally by Certa Pro and Franchisee.

Whether the matter is heard by a single arbitrator or three, the arbitrator's award shall be rendered within 7-days of the close of the hearing and shall include all fees, costs and attorneys' fees for Certa Pro if it is the prevailing party. The arbitrators shall have no authority to determine class action claims and shall have no authority to amend or modify the terms of the Agreement. To the extent permitted by applicable law, no issue of fact or law shall be given preclusive or collateral estoppel effect in any arbitration, except to the extent such issue may have been determined in another proceeding between the parties. Judgment upon the award of the arbitrator shall be submitted for confirmation to the United States District for the Eastern District of Pennsylvania and, if confirmed, may be subsequently entered in any court having competent jurisdiction. This agreement to arbitrate shall survive any termination or expiration of this Agreement.

       8.2.1   Notwithstanding anything to the contrary in this Agreement, Certa Pro shall not be required to arbitrate the following disputes or claims against Franchisee:

            1.     a collection action not in excess of $15,000;

            2.     injunctive claims pursuant to Section 18.4; and

            3.     claims which may be asserted by Certa Pro against Franchisee in any action to which a third party, i.e. not a party to this Agreement or a guarantor of a party's obligations under this Agreement, is a party litigant.

18.3   Third Party Beneficiaries. Certa Pro's officers, directors, shareholders, agents and/or employees are express third party beneficiaries of this Agreement and the mediation and arbitration provisions contained herein, each having authority to specifically enforce the right to mediate and arbitrate claims asserted against such person(s) by Franchisee.

18.4   Injunctive Relief. Nothing contained in this Agreement herein shall prevent Certa Pro from applying to or obtaining from any court having jurisdiction, without bond, a writ of attachment, temporary injunction, preliminary injunction and/or other emergency relief available to safeguard and protect Certa Pro's interest prior to the filing of any arbitration proceeding or pending the trial or handing down of a decision or award pursuant to any arbitration proceeding conducted hereunder.

18.5   Jurisdiction and Venue. With respect to any proceeding not subject to arbitration, the parties agree that any action at law or in equity instituted against either party to this Agreement shall be commenced only in the Pennsylvania Court of Common Pleas for Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania.

18.6   Jury Trial Waiver. With respect to any proceeding not subject to arbitration, the parties hereby agree to waive trial by jury in any action, proceeding or counterclaim, whether at law or equity, regardless of which party brings suit. This waiver shall apply to any matter whatsoever between the parties hereto which arises out of or is related in any way to this Agreement, the performance of either party, and/or your purchase from Certa Pro of the franchise and/or any goods or services.

18.7   <u>Waiver of Punitive Damages</u>.  The parties waive to the fullest extent permitted by law, any right to or claim for any punitive, exemplary, incidental, indirect, special or consequential damages (including, without limitation, lost profits) which either party may have against the other arising out of any cause whatsoever (whether such cause be based in contract, negligence, strict liability, other tort or otherwise) and agree that in the event of a dispute, recovery shall be limited to actual damages.  If any other term of this Agreement is found or determined to be unconscionable or unenforceable for any reason, the foregoing provisions shall continue in full force and effect, including, without limitation, the waiver of any right to claim any consequential damages.

18.8   <u>Attorneys' Fees</u>. If either party institutes any judicial or arbitration proceeding to enforce any monetary or nonmonetary obligations or to interpret the terms of this Agreement, the prevailing party shall, upon final judgment, be liable to the other for all costs, including reasonable attorneys' fees, incurred with such proceeding.

## ARTICLE 19 - GENERAL PROVISIONS

19.1   <u>Gender, Number and Person</u>.   Throughout this Agreement, the use of the singular number shall include the plural and vice versa, the use of gender shall include the masculine, feminine and neuter genders and the word "person" shall include an individual, a trust, a partnership, a body corporate or politic, an association or other incorporated or unincorporated organization.

19.2   <u>Overdue Amounts.</u>  All royalty and advertising contributions and amounts due for goods or supplies or otherwise from Franchisee to Certa Pro or its affiliates pursuant to this Agreement or otherwise shall bear interest after the due date at the rate of the lesser of one and one half percent per month (18% per annum) or at the maximum rate permitted by law, whichever is less.  The acceptance of any interest payment shall not be construed as a waiver by Certa Pro of its rights in respect of the default giving rise to such payment and shall be without prejudice to Certa Pro's right to terminate this Agreement in respect of such default.

19.3   <u>Indemnification of Certa Pro.</u>   Franchisee hereby agrees, during and after the term of this Agreement, to indemnify and hold Certa Pro and its directors, shareholders, officers, employees and agents (the "Indemnified Parties") harmless from any and all liabilities, losses, suits, claims, demands, costs, fines and actions of any kind or nature whatsoever to which any of the Indemnified Parties shall or may become liable for, or suffer by reason of any breach, violation or non-performance on the part of Franchisee or any of its agents, servants or employees of any term or condition of this Agreement and from all claims, damages, suits, costs or rights of any persons, firms or corporations arising from the operation of the Certa Pro Business.

19.4   <u>No Liability</u>.   Certa Pro is not responsible or otherwise liable for any injury, loss, or damage resulting from, occasioned to, or suffered by any person or persons or to any property because of any services provided or products sold by it to Franchisee.

19.5   <u>Joint and Several</u>.   If two or more individuals or entities (or any combination thereof) shall sign or be subject to the terms and conditions of this Agreement as Franchisee or as a guarantor hereof, the liability of each of them under this Agreement shall be deemed to be joint and several.

19.6   Severability.   If, for any reason whatsoever, any term or condition of this Agreement or the application thereof shall be held to be invalid or unenforceable, then all other terms and conditions of this Agreement and the application of such terms and conditions shall not be affected thereby and each term and condition of this Agreement shall be separately valid and enforceable to the fullest extent permitted by law.

19.7   Franchisee May Not Withhold Payments Due Certa Pro.   Franchisee agrees not to, on grounds of the alleged non-performance by Certa Pro of any of its obligations hereunder, withhold payment of any royalty or other amounts due to Certa Pro (or its affiliates), whether on account of goods purchased by Franchisee or otherwise.

19.8   Notice.   All notices, approvals or other communications (collectively, "Notices") required or permitted to be given hereunder shall be in writing, and shall be deemed duly given when delivered by hand or mailed by certified mail, return receipt requested, postage prepaid, to the parties at their respective addresses set forth below or to such other party or parties at such address or addresses as may be given by either party to the other in writing from time to time. Such Notices, if mailed, shall be deemed to have been given on the second business day (except Saturdays and Sundays) following such mailing, or, if delivered in hand, shall be deemed to have been given on the day of delivery, if a business day, or if not a business day, on the business day next following the day of delivery; provided however, that if such notice shall have been mailed and if regular mail service shall be interrupted by strike or other irregularity before the deemed receipt of such Notice, then such Notice shall not be effective unless delivered.

19.9   Headings, Article Numbers.   The headings, article numbers and table of contents, if any, appearing in this Agreement or any schedule hereto are for reference only and shall not in any way affect the construction or interpretation of this Agreement.

19.10   Governing Law; Jurisdiction.   This Agreement shall be deemed to have been written, approved and accepted in the Commonwealth of Pennsylvania, and the construction and interpretation of said Agreement, wherever executed and wherever to be performed, shall be governed by the laws of the Commonwealth of Pennsylvania.

19.11   Time of the Essence.   Time shall be of the essence of this Agreement and of each and every part hereof.

19.12   Waiver of Obligations.   Certa Pro may, by written instrument, unilaterally waive any obligation of or restriction upon Franchisee under this Agreement. No acceptance by Certa Pro of any payment by Franchisee and no failure, refusal or neglect of Certa Pro to exercise any right under this Agreement or to insist upon full compliance by Franchisee with its obligations hereunder, including without limitation, any mandatory specification, standard or operating procedure, shall constitute a waiver of any provision of this Agreement.

19.13   Default Cumulative.   In the event that Franchisee acquires the right and franchise to operate another of Certa Pro's businesses, any default by Franchisee in the performance or observance of any of the terms and conditions under any one agreement governing the aforesaid right and franchise shall be deemed to be an event of default under all other agreements pursuant to which Franchisee operates such a Certa Pro business or businesses.

19.14 <u>Set-Off by Certa Pro</u>.   Notwithstanding anything contained in this Agreement, upon Franchisee's failure to pay to Certa Pro any amounts provided for herein when due, Certa Pro shall have the right to deduct any and all such amounts remaining unpaid from any monies or credits held by Certa Pro for the account of Franchisee.

19.15 <u>Further Assurances</u>.   The parties hereto agree to execute and deliver such further and other agreements or documents, to cause such meetings to be held, resolutions passed and by-laws enacted, and to exercise their vote and influence and do and cause to be done any further and other acts and things as may be necessary in order to give full effect to this Agreement and every part hereof.

19.16 <u>Binding Agreement</u>.   Subject to the restrictions on assignment herein contained, this Agreement shall enure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns.

19.17 <u>When Agreement Binding on Certa Pro</u>.   This Agreement is not effective until signed by an authorized corporate officer of Certa Pro.

19.18 <u>Rights of Certa Pro are Cumulative</u>.   The rights of Certa Pro hereunder are cumulative and no exercise or enforcement by Certa Pro of any right or remedy hereunder shall preclude the exercise or enforcement by Certa Pro of any other right or remedy hereunder or which Certa Pro is otherwise entitled by law to enforce.

19.19 <u>Force Majeure</u>.   In the event that any party hereto is delayed in the performance of any act required herein by reason of labor disputes, inability to procure materials, power failures, restrictive governmental laws or regulations, riots, insurrection, war or other reasons of a like nature not the fault of such party, the performance of such act and the time for performance thereof shall be extended for a period equivalent to the period of such delay, up to a maximum of three (3) months.  The provisions of this Article 18 shall not operate to excuse Franchisee from the prompt payment of any amount due Certa Pro under this Agreement.

19.20 <u>Entire Agreement</u>.   This Agreement and the documents incorporated herein by reference constitute the entire agreement between the parties and supersedes all previous agreements and understandings between the parties in any way relating to the subject matter hereof.

## ARTICLE 20 - ACKNOWLEDGMENTS

20.1 <u>Independent Investigation</u>.

20.1.1 Franchisee and any guarantor hereunder acknowledge that they have conducted an independent investigation of the Certa Pro Business and recognize that the business venture contemplated by this Agreement involves business risks and that its success will be largely dependent upon the ability of Franchisee as an independent businessperson.  Certa Pro expressly disclaims the making of and Franchisee and any guarantor hereunder acknowledge that they have not received any warranty or guarantee, expressed or implied, as to the potential volume, profit, cash flow or success of the Certa Pro Business.  The provisions of this Subsection 20.1.1 do not apply and are not effective in the State of Illinois.

20.1.2 Franchisee and any guarantor hereunder acknowledge that they have received, have had an ample time to read and have read this Agreement and fully understand its provisions.  Franchisee and any guarantor hereunder further acknowledge that they have had an adequate opportunity to be advised by legal counsel and accounting professionals of their own choosing regarding all pertinent aspects of this franchise, the purchase of the Certa Pro Business and the franchise relationship.

20.2    Independent Contractor.

20.2.1 The parties agree and acknowledge that for all purposes under this Agreement or otherwise, that Franchisee is an independent contractor and is in no way authorized to make any contract, agreement, warranty, or representation, or to create any obligation, express or implied, on behalf of Certa Pro.  Franchisee agrees to prominently display in its place of business a certificate from Certa Pro stating that said business is operated by Franchisee as a franchisee of Certa Pro and not as an agent thereof.

20.2.2 Under no circumstances shall Certa Pro be liable for any act, omission, debt or any other obligation of Franchisee.  Franchisee agrees to indemnify and hold Certa Pro harmless against any such claim and the cost of defending against such claims arising directly or indirectly from, or as a result of, or in connection with, Franchisee's operation of the Certa Pro Business.

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement as of the _29_ day

of _DECEMBER_, _2004_.

)
)        **CERTA PROPAINTERS LTD.:**
)
)
)        By: _____
)             Its Authorized Officer
)
)        Address:        150 Green Tree Road
)                        Suite 1003
)                        P.O. Box 836
)                        Oaks, PA 19456
)
)
)        **FRANCHISEE:**
)
)
)        By: _____
)             Its Authorized Officer
)
)        Print Name: _Chris Mura-Smith_
)
)        Address: _26741 Portola Pkwy_
)                 _Ste. 1E #488_
)                 _Foothill Ranch, CA 92610_
)

# *SCHEDULE   A*

---

Territory.

The Franchisee's territory is as follows:

### LAGUNA, CA:
92677, 92629, 92624, 92673, 92672 **** SHolman

Authorized Telephone Numbers.

The Franchisee is authorized to publish the following telephone numbers used in connection with the Franchised Business:

800-462-3782

**EXHIBIT "B"**

## CONSENT OF ASSIGNMENT AGREEMENT

This Consent of Assignment Agreement (the "Agreement") is made this
16th day of ___April___, 2007 , by and between CertaPro Painters, Ltd., a
Massachusetts corporation with an address at 150 Green Tree Road, Suite 1003,
P.O. Box 836, Oaks, PA 19456 ("CertaPro"), and Chris Mura-Smith ("Assignor"),
and Gordon Kohl ("Assignee").

### BACKGROUND

     A.    Assignor entered into a franchise agreement for the designated
territory of Laguna, CA, dated December 29, 2004 (the "Franchise Agreement")
with CertaPro, and executed personal guarantees, for the right to operate a
franchised CertaPro business (the "Franchised Business").

     B.    Assignor desire to sell his business to Assignee and pursuant to the
terms of the Franchise Agreement desires to assign his rights, duties, and
obligations under the Franchise Agreement to the Assignee, and Assignee
wishes to be bound by the terms of the Franchise Agreement.

     C.    CertaPro desires to consent to the assignment, pursuant to the
terms of this Agreement.

### AGREEMENT

     In consideration of the mutual promises and covenants contained in this
Agreement, and for good and valuable consideration, the receipt and sufficiency
of which is acknowledged, and intending to be legally bound, the parties agree to
the following:

     1.    Subject to the terms and conditions of this Agreement, CertaPro
consents to the assignment of Assignor's interest under the terms of the
Franchise Agreement to the Assignee effective upon the execution by all parties
of this Agreement.

     2.    Assignee hereby ratifies and agrees to be bound by all the terms of
the Franchise Agreement, including without limitation to all rights, duties, and
obligations contained therein.

     3.    The Assignee has paid to CertaPro a transfer fee of $35,000.00
upon execution of this Agreement.

Page 1 of 4

Initials: Assignor: _____   Assignee: _____ 4/19/:7

4.    Assignor acknowledges that all outstanding obligations related to the operation of the Laguna, CA CertaPro Franchise including but not limited to payroll, suppliers, subcontractors, and CertaPro have been satisfied, or has otherwise disclosed to the Assignee any and all outstanding obligations relating to the operation of the CertaPro Franchise.

5.    The parties agree that Assignor shall remain bound by all of the post-term covenants and obligations contained in the Laguna, CA Franchise Agreement including, without limitation to those relating to confidentiality, indemnification, obligations upon termination, and restrictions on competition.

6.    Assignee shall assume all outstanding customer warranty obligations of the Assignor relating to the operation of the Franchised Business.

7.    Assignor agrees that for a period of three (3) years after the date of execution of this Agreement, neither Assignor, its partners or shareholders nor any member of the immediate family of Assignor or its partners or shareholders shall, directly or indirectly, for itself or through, on behalf of, or in conjunction with any other person, partnership, corporation or other entity own, maintain, engage in, be employed by, or have any interest in any other business which offers or sells products or services of the type offered under the CertaPro System within a radius of twenty (20) miles as the crow flies of the Territory, or five (5) miles of any other CertaPro franchise's territory in operation, or of any territory which is being considered or discussions are under way for a CertaPro franchise, as of the date of execution of this Agreement; provided, however, Assignor may continue to operate any other CertaPro System franchise for which Assignor and CertaPro have a then-current franchise agreement.

8.    Effective upon execution of this Agreement, Assignor and all persons and entities claiming by, through or under him, release, acquit and forever discharge CertaPro and its present and former officers, employees, shareholders, directors, agents, servants, representatives, affiliates, successors and assigns (the "CertaPro Releasees") from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorney's fees, actions or cause of action whatsoever, whether known or unknown, which him, by himself, on behalf of, or in conjunction with any other person, persons, partnership or corporation, has, had or claim to have against the CertaPro Releasees arising out of or related to the sale of the franchise or the parties' rights or obligations under the Laguna, CA Franchise Agreement.

Page 2 of 4

Initials: Assignor: _____    Assignee: _____

9.     Effective upon execution of this Agreement, Assignee and all persons and entities claiming by, through or under him, release, acquit and forever discharges CertaPro and its present and former officers, employees, shareholders, directors, agents, servants, representatives, affiliates, successors and assigns (the "CertaPro Releasees") from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorney's fees, actions or cause of action whatsoever, whether known or unknown, which him, by himself, on behalf of, or in conjunction with any other person, persons, partnership or corporation, has, had or claim to have against the CertaPro Releasees arising out of or related to the sale of the franchise or the parties' rights or obligations under the Laguna, CA Franchise Agreement up to the date of execution of this Agreement.

10.     Effective upon execution of this Agreement, except as otherwise provided in this Agreement, CertaPro, for itself and all persons and entities claiming by, through, or under it, releases, acquits and forever discharges Assignor and his successors and assigns from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorney's fees, actions or cause of action whatsoever, whether known or unknown, which CertaPro, by itself, on behalf of, or in conjunction with any other person, persons, partnership or corporation, has, had or claims to have against Franchisee arising out of or related to the parties' rights or obligations under the Laguna, CA Franchise Agreement.

11.     This Agreement constitutes the entire integrated agreement of the parties with respect to the subject matter contained in this Agreement, and may not be subject to any modification without written consent of the parties.

12.     This Agreement shall be construed under the laws of the Commonwealth of Pennsylvania, which laws shall control in the event of any conflict of law.

13.     This Agreement shall be for the benefit of and binding upon the parties and their respective representatives, successors and assigns.

14.     Each party acknowledges that the terms of this Agreement have been completely read and are fully understood and voluntarily accepted by each party, after having a reasonable opportunity to retain and confer with counsel. This Agreement is entered into after full investigation by the parties, and the parties are not relying upon any statements or representations not embodied in this Agreement.

Page 3 of 4

Initials: Assignor: _____    Assignee: _____ 4/2/07

15.    If any party institutes any judicial or arbitration proceeding to enforce any monetary or nonmonetary obligations or interpret the terms of this Agreement, the prevailing party shall be entitled to recover all costs, including reasonable attorneys' fees, incurred in connection with such proceeding.

16.    Assignor and Assignee agree that they have had a relationship with CertaPro at its offices in Pennsylvania and that, with the exception of CertaPro's right to seek injunctive relief in any appropriate jurisdiction, any action by or against CertaPro arising out of or relating to this Agreement shall be commenced and concluded in the Commonwealth of Pennsylvania before the Court of Common Pleas of Montgomery County or the United States District Court of the Eastern District of Pennsylvania.

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND ITS TERMS. I WOULD NOT SIGN THIS AGREEMENT IF I DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.**

CertaPro Painters, Ltd.

Attest: _____    By: _____
                           James S. Leiby, Chief Financial Officer

Witness: _____    _____
                            Chris Mura-Smith
                            **ASSIGNOR**

Witness: _____    _____
                            Gordon Kohl
                            **ASSIGNEE**

Page 4 of 4

Initials: Assignor: _____    Assignee: _____